PART 251—LAND USES

...

Defense Exhibit 6

## Subpart B—Special Uses

**Authority:**

16 U.S.C. 472, 497b, 551, 1134, 3210; 30 U.S.C. 185; 43 U.S.C. 1740, 1761–1771.

**Source:**

45 FR 38327, June 6, 1980, unless otherwise noted.

### §251.50 Scope.

(a) All uses of National Forest System lands, improvements, and resources, except those provided for in the regulations governing the disposal of timber (part 223) and minerals (part 228) and the grazing of livestock (part 222), are designated "special uses." Before engaging in a special use, persons or entities must submit an application to an authorized officer and must obtain a special use authorization from the authorized officer unless that requirement is waived by paragraph (c) of this section.

...

(c) A special use authorization is not required for noncommercial recreational activities such as camping, picnicking, hiking, fishing, hunting, horseback riding, and boating, as well as noncommercial activities involving the expression of views such as assemblies, meetings, demonstrations, and parades, except for:

...

(3) Noncommercial group uses as defined in §251.51 of this subpart.

...

[45 FR 38327, June 6, 1980, as amended at 49 FR 25449, June 21, 1984; 53 FR 16549, May 10, 1988; 60 FR 45293, Aug. 30, 1995]

### §251.51 Definitions.

*Applicant*—any individual, partnership, corporation, association, or other business entity, and any Federal, State or governmental entity or agency which applies for a special use authorization.

*Authorized officer*—any employee of the Forest Service to whom has been delegated the authority to perform the duties described in this part.

*Chief*—the Chief of the Forest Service.

*Commercial use or activity*—any use or activity on National Forest System lands (a) where an entry or participation fee is charged, or (b) where the primary purpose is the sale of a good or service, and in either case, regardless of whether the use or activity is intended to produce a profit.

*Easement*—a type of special use authorization (usually granted for linear rights-of-way) that is utilized in those situations where a conveyance of a limited and transferable interest in National Forest System land is necessary or desirable to serve or facilitate authorized long-term uses, and that may be compensable according to its terms.

*Group use*—an activity conducted on National Forest System lands that involves a group of 75 or more people, either as participants or spectators.

*Holder*—any applicant who has received a special use authorization.

*Lease*—a type of special use authorization (usually granted for uses other than linear rights-of-way) that is used when substantial capital investment is required and when conveyance of a conditional and transferable interest in National Forest System lands is necessary or desirable to serve or facilitate authorized long-term uses, and that may be revocable and compensable according to its terms.

*National Forest System land*—all lands, waters, or interests therein administered by the Forest Service.

*NEPA procedures*—the rules, policies, and procedures governing agency compliance with the National Environmental Policy Act set forth in 50 CFR parts 1500–1508, 7 CFR part 1b, Forest Service Manual Chapter 1950, and Forest Service Handbook 1909.15.

*Noncommercial use or activity*—any use or activity that does not involve a commercial use or activity as defined in this section.

*Permit*—a special use authorization which provides permission, without conveying an interest in land, to occupy and use National Forest System land or facilities for specified purposes, and which is both revocable and terminable.

*Revocation*—the cessation of a special use authorization by action of an authorized officer before the end of the specified period of occupancy or use for reasons set forth in §251.60(a)(1)(i), (a)(2)(i), (g), and (h) of this subpart.

*Right-of-way*—land authorized to be used or occupied for the construction, operation, maintenance and termination of a project or facility passing over, upon, under or through such land.

*Secretary*—the Secretary of Agriculture.

*Ski area*—a site and attendant facilities expressly developed to accommodate alpine or nordic skiing and from which the preponderance of revenue is generated by the sale of lift tickets and fees for ski rentals, for skiing instruction and trail passes for the use of permittee-maintained ski trails. A ski area may also include ancillary facilities directly related to the operation and support of skiing activities.

*Sound business management principles*—a phrase that refers to accepted industry practices or methods of establishing fees and charges that are used or applied by the Forest Service to help establish the appropriate charge for a special use. Examples of such practices and methods include, but are not limited to, appraisals, fee schedules, competitive bidding, negotiation of fees, and application of other economic factors, such as cost efficiency, supply and demand, and administrative costs.

*Special use authorization*—a permit, term permit, lease, or easement which allows occupancy, use, rights, or privileges of National Forest System land.

*Suspension*—a temporary revocation of a special use authorization.

*Termination*—the cessation of a special use authorization by operation of law or by operation of a fixed or agreed-upon condition, event, or time as specified in an authorization without the necessity for any decision or action by the authorized officer; for example, expiration of the authorized term or transfer of the authorized improvement to another party.

*Term permit*—a special use authorization to occupy and use National Forest System land, other than rights-of-way under §251.53(l) of this part, for a specified period which is both revocable and compensable according to its terms.

[45 FR 38327, June 6, 1980, as amended at 49 FR 25449, June 21, 1984; 53 FR 16550, May 10, 1988; 54 FR 22593, May 25, 1989; 60 FR 45293, Aug. 30, 1995; 60 FR 54409, Oct. 23, 1995; 63 FR 65964, Nov. 30, 1998]

### §251.54 Proposal and application requirements and procedures.

(a) *Early notice.* When an individual or entity proposes to occupy and use National Forest System lands, the proponent is required to contact the Forest Service office(s) responsible for the management of the affected land as early as possible in advance of the proposed use.

(b) *Filing proposals.* Proposals for special uses must be filed in writing with or presented orally to the District Ranger or Forest Supervisor having jurisdiction over the affected land (§200.2 of this chapter), except as follows:

...

(c) *Rights of proponents.* A proposal to obtain a special use authorization does not grant any right or privilege to use National Forest System lands. Rights or privileges to occupy and use National Forest System lands under this subpart are conveyed only through issuance of a special use authorization.

(d) *Proposal content*—(1) *Proponent identification.* Any proponent for a special use authorization must provide the proponent's name and mailing address, and, if the proponent is not an individual, the name and address of the proponent's agent who is authorized to receive notice of actions pertaining to the proposal.

(2) *Required information*—(i) *Noncommercial group uses.* Paragraphs (d)(3) through (d)(5) of this section do not apply to proposals for noncommercial group uses. A proponent for noncommercial group uses shall provide the following:

(A) A description of the proposed activity;

(B) The location and a description of the National Forest System lands and facilities the proponent would like to use;

(C) The estimated number of participants and spectators;

(D) The starting and ending time and date of the proposed activity; and

(E) The name of the person or persons 21 years of age or older who will sign a special use authorization on behalf of the proponent.

...

(3) *Guidance and information to proponents.* For proposals for noncommercial group use as well as for those proposals that meet the minimum requirements of paragraphs (e)(1)(i)-(ix), the authorized officer, to the extent practicable, shall provide the proponent guidance and information on the following:

(i) Possible land use conflicts as identified by review of forest land and resource management plans, landownership records, and other readily available sources;

(ii) Proposal and application procedures and probable time requirements;

(iii) Proponent qualifications;

(iv) Applicable fees, charges, bonding, and/or security requirements;

(v) Necessary associated clearances, permits, and licenses;

(vi) Environmental and management considerations;

(vii) Special conditions; and

(viii) identification of on-the-ground investigations which will require temporary use permits.

(4) *Confidentiality.* If requested by the proponent, the authorized officer, or other Forest Service official, to the extent reasonable and authorized by law, shall hold confidential any project and program information revealed during pre-application contacts.

(5) *Second-level screening of proposed uses.* A proposal which passes the initial screening set forth in paragraph (e)(1) and for which the proponent has submitted information as required in paragraph (d)(2)(ii) of this section, proceeds to second-level screening and consideration. In order to complete this screening and consideration, the authorized officer may request such additional information as necessary to obtain a full description of the proposed use and its effects. An authorized officer shall reject any proposal, including a proposal for commercial group uses, if, upon further consideration, the officer determines that:

(i) The proposed use would be inconsistent or incompatible with the purposes for which the lands are managed, or with other uses; or

(ii) The proposed use would not be in the public interest; or

(iii) The proponent is not qualified; or

(iv) The proponent does not or cannot demonstrate technical or economic feasibility of the proposed use or the financial or technical capability to undertake the use and to fully comply with the terms and conditions of the authorization; or

(v) There is no person or entity authorized to sign a special use authorization and/or there is no person or entity willing to accept responsibility for adherence to the terms and conditions of the authorization.

(6) *NEPA compliance for second-level screening process.* A request for a special use authorization that does not meet the criteria established in paragraphs (e)(5)(i) through (e)(5)(v) of this section does not constitute an agency proposal as defined in 40 CFR 1508.23 and, therefore, does not require environmental analysis and documentation.

...

(g) *Application processing and response.* (1) *Acceptance of applications.* Except for proposals for noncommercial group uses, if a request does not meet the criteria of both screening processes or is subsequently denied, the proponent must be notified with a written explanation of the rejection or denial and any written proposal returned to the proponent. If a request for a proposed use meets the criteria of both the initial and second-level screening processes as described in paragraph (e) of this section, the authorized officer shall notify the proponent that the agency is prepared to accept a written formal application for a special use authorization and shall, as appropriate or necessary, provide the proponent guidance and information of the type described in paragraphs (e)(3)(i) through (e)(3)(viii) of this section.

(2) *Processing applications.* (i) Upon acceptance of an application for a special use authorization other than a planning permit, the authorized officer shall evaluate the proposed use for the requested site, including effects on the environment. The authorized officer may request such additional information as necessary to obtain a full description of the proposed use and its effects.

(ii) Federal, State, and local government agencies and the public shall receive adequate notice and an opportunity to comment upon a special use proposal accepted as a formal application in accordance with Forest Service NEPA procedures.

(iii) The authorized officer shall give due deference to the findings of another agency such as a Public Utility Commission, the Federal Regulatory Energy Commission, or the Interstate Commerce Commission in lieu of another detailed finding. If this information is already on file with the Forest Service, it need not be refiled, if reference is made to the previous filing date, place, and case number.

(iv) Applications for noncommercial group uses must be received at least 72 hours in advance of the proposed activity. Applications for noncommercial group uses shall be processed in order of receipt, and the use of a particular area shall be allocated in order of receipt of fully executed applications, subject to any relevant limitations set forth in this section.

(v) For applications for planning permits, including those issued for a major development as described in paragraph (f)(3) of this section, the authorized officer shall assess only the applicant's financial and technical qualifications and determine compliance with other applicable laws, regulations, and orders. Planning permits may be categorically excluded from documentation in an environmental assessment or environmental impact statement pursuant to Forest Service Handbook 1909.15 (36 CFR 200.4).

(3) *Response to applications for noncommercial group uses.* (i) All applications for noncommercial group uses shall be deemed granted and an authorization shall be issued for those uses pursuant to the determination as set forth below, unless applications are denied within 48 hours of receipt. Where an application for a noncommercial group use has been granted or is deemed to have been granted and an authorization has been issued

under this paragraph, an authorized officer may revoke that authorization only as provided under §251.60(a)(1)(i).

~~An authorized officer shall grant an application for a special use authorization for a noncommercial group use upon a determination that:~~

(A) Authorization of the proposed activity is not prohibited by the rules at 36 CFR part 261, subpart B, or by Federal, State, or local law unrelated to the content of expressive activity;

(B) Authorization of the proposed activity is consistent or can be made consistent with the standards and guidelines in the applicable forest land and resource management plan required under the National Forest Management Act and 36 CFR part 219;

(C) The proposed activity does not materially impact the characteristics or functions of the environmentally sensitive resources or lands identified in Forest Service Handbook 1909.15, chapter 30;

(D) The proposed activity will not delay, halt, or prevent administrative use of an area by the Forest Service or other scheduled or existing uses or activities on National Forest System lands, including but not limited to uses and activities authorized under parts 222, 223, 228, and 251 of this chapter;

(E) The proposed activity does not violate State and local public health laws and regulations as applied to the proposed site. Issues addressed by State and local public health laws and regulations as applied to the proposed site include but are not limited to:

(*1*) The sufficiency of sanitation facilities;

(*2*) The sufficiency of waste-disposal facilities;

(*3*) The availability of sufficient potable drinking water;

(*4*) The risk of disease from the physical characteristics of the proposed site or natural conditions associated with the proposed site; and

(*5*) The risk of contamination of the water supply;

(F) The proposed activity will not pose a substantial danger to public safety. Considerations of public safety must not include concerns about possible reaction to the users' identity or beliefs from non-members of the group that is seeking an authorization and shall be limited to the following:

(*1*) The potential for physical injury to other forest users from the proposed activity;

(2) The potential for physical injury to users from the physical characteristics of the proposed site or natural conditions associated with the proposed site;

(3) The potential for physical injury to users from scheduled or existing uses or activities on National Forest System lands; and

(4) The adequacy of ingress and egress in case of an emergency;

(G) The proposed activity does not involve military or paramilitary training or exercises by private organizations or individuals, unless such training or exercises are federally funded; and

(H) A person or persons 21 years of age or older have been designated to sign and do sign a special use authorization on behalf of the applicant.

...