# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SCOTT SOWKA,

      Defendant-Appellant.

---

## APPELLEE'S ANSWER BRIEF

---

ON APPEAL FROM THE UNITED STATES MAGISTRATE

The Honorable David West

Criminal Case No: F4067046

---

TROY A. EID
United States Attorney

s/HABIB NASRULLAH
Assistant U.S. Attorney
Colorado Bar #23063
1225 17th Street, Suite 700
Denver, CO 80202
(303) 454-0100
E-mail Address:habib.nasrullah@usdoj.gov

Attorneys for Plaintiff-Appellee

**ORAL ARGUMENT IS NOT REQUESTED BY APPELLEE.**

November 23, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF PRIOR OR RELATED APPEALS . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I. Defendant is Not Entitled to a "Religious Use" Defense Under RFRA
      because Application of the Law in this Case Does Not Trigger
      RFRA Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A. Issue Raised and Rule upon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C. Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1. Defendant's Failure to Apply for a Permit Precludes His Ability
              to Raise a RFRA Defense in this Case. . . . . . . . . . . . . . . . . . . . . . 14

            2. Were Defendant Permitted to Raise RFRA, His Prima Facie Case
              is Not Satisfied Here Because No Substantial Burden was
              Placed Upon Defendant's Exercise of Religion. . . . . . . . . . . . . 15

            3. Even if a Prima Facie Case Under RFRA is Presented Here, the
              Burden is Justified Because 36 C.F.R. § 261.10(k) and 36

C.F.R. § 251.54 (1) Further Compelling Governmental Interests and (2) Are the Least Restrictive Means of Doing So. . . . . . . . 19

    a.     The Forest Service Regulations Serve Compelling Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

(1) O Centro Guides the Compelling Interest Analysis in this Case. . . . . . . . . . . . . . . . . . . . . . . . . . 20

(2) This Case is Distinguishable From O Centro Because the Defendant's Failure to Obtain a Permit Adversely Affects the Forest Service's Interests and Causes Administrative Harm. . . . . . . . . . . . . . . . 23

        (a) A Permitting Exception in this Case Would Adversely Affect the Forest Service's Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        (b) An Exception to Uniform Permitting Requirements Would Cause Administrative Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

            i. The Signature Requirement Furthers the Forest Service's Management Goals.. . . . . . . . . . . . . . . . . . . . . . . . . . . 28

            ii. The Timeliness Requirement Furthers the Forest Service's Management Goals. . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

            iii. The Regulation of Site Choices By Groups Furthers the Forest Service's Management Goals. . . . . . . . . . . . . . . . . . 30

            iv. The Enforcement of These Regulations Furthers the Forest Service's Management Goals. . . . . . . . . . 31

    b. The Forest Service's Regulations are the Least Restrictive Means by Which to Further its Interests. . . . 31

(1) The Regulations are Narrowly Tailored to Advance the Forest Service's Interests. . . . . . . . . . . . . . . 33

(2) There are no Alternative Less Restrictive Means for Achieving the Forest Service's Interests. . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF DIGITAL SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Black v. Arthur*,
201 F.3d 1120 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Braunfield v. Brown*,
366 U.S. 599 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Employment Division Department of Human Resources of Oregon v. Smith*,
494 U.S. 872 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*,
126 S. Ct. 1211 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Hamilton v. Schriro*,
74 F.3d 1545 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kikimura v. Hurley*,
242 F.3d 950 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Navajo Nation v. U.S. Forest Serv.*,
408 F. Supp. 2d 866 (D. Ariz. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*O Centro Espirita Beneficente Uniao Do Vegetal v. Gonzalez*,
342 F.3d 1170 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*O Centro Espirita Beneficente Uniao Do Vegetal v. Gonzalez*,
389 F.3d 973 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sherbert v. Verner*,
374 U.S. 398 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Callarman*,
273 F.3d 1284 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Hardman*,
297 F.3d 1116 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Kalb*,
    234 F.3d 827 (3rd Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 29

*United States v. Lee*,
    455 U.S. 252 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*United States v. Masel*,
    54 F. Supp. 2d 903 (W.D. Wis. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Myers*,
    95 F.3d 1475 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Smart*,
    278 F.3d 1168 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Tawahonga*,
    2006 WL 2619174 (D. Ariz. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## FEDERAL STATUTES, RULES AND GUIDELINES

42 U.S.C. § 2000bb. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

36 C.F.R. § 251. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

36 C.F.R. § 261.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. App. P. 32(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Fed. R. Crim. P. 58. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

60 Fed.Reg. 45 (Aug. 30, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

S.Rep. No. 103-111 at 8-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

# STATEMENT OF JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to Federal Rules of

Criminal Procedure, 18 U.S.C. § 3402 (2006).

# STATEMENT OF THE ISSUE

**Is Defendant Entitled to a Religious Freedom Restoration Act Religious Use
Defense Where Defendant Violated 36 C.F.R. § 261.10(k) for Use of National
Forest System Land Without the Necessary Permit and Where the Permit
System Is Designed to Allow the Forest Service to Protect Natural Resources,
Protect Public Health and Safety, and Allocate Resources among Users?**

# STATEMENT OF THE CASE

On July 1, 2006, Defendant Scott Sowka ("Defendant") was issued Violation

Notice F4067046 charging him with violating 36 C.F.R. § 261.10(k). (U.S.D.C.

Violation Notice Doc. 2.) The statute prohibits "[u]se or occupancy of National Forest

System land or facilities without special-use authorization when such authorization is

required." 36 C.F.R. § 261.10(k) (2006). Defendant is part of the Rainbow Family of

Living Light.

On July 2, 2006, Defendant made an initial appearance at arraignment before

Magistrate Judge David L. West. (Doc. 3.) At that time, Defendant entered a plea of Not

Guilty and a bench trial was set for July 7, 2006. *Id.* At trial, Defendant was found guilty

of violating 36 C.F.R. § 261.10(k) and was sentenced to pay a fine of $100, a $25 Central

Violations Bureau processing fee, and a $10 victim compensation fee. (Supp. Appx.

000097:23–000098:3, July 7, 2006.) Defendant was also sentenced to unsupervised

probation for one year, during which time he was prohibited from returning to any

National Forest. (Supp. Appx. 000098:4–8.) However, Defendant was permitted to be in Routt County National Forest until September 1, 2006, to participate in the cleanup of the site. (Supp. Appx. 000098:8–10.) The unsupervised probation is to be lifted if the Rainbow Family makes a good faith effort to obtain a permit by January 1, 2007, for the 2007 gathering. (Supp. Appx. 000098:11–15.)

A timely notice of appeal was filed on July 14, 2006.

## STATEMENT OF THE FACTS

The Rainbow Family of Living Light ("Rainbow Family") is a "loosely structured group of people who gather periodically on National Forest land to pray for peace and to discuss political and environmental issues." *Black v. Arthur*, 201 F.3d 1120, 1122 (9th Cir. 2000). These meetings are referred to as "Gatherings." Each year the Rainbow Family organizes an annual gathering for its members. *Id*. These gatherings take place on public lands due to the group's traditions. (Supp. Appx. 000041:13–15.) The number of participants in the gathering is very large and can range from 10,000 to 20,000 people. (Supp. Appx. 000021:17–2.)

These gatherings take place in the first part of July each year in a different National Forest location that is not determined until about one month prior to the event. (Supp. Appx. 000021:22–11:15; 000024:7–11.) Once a decision is reached, it is communicated through several websites. (Supp. Appx. 000022:16–19.) The Rainbow Family does not notify the local forest personnel of the gathering until the first members

arrive onsite.  (Doc. 4–2 at 3.)  In addition, due to the Rainbow Family's professed non-hierarchical structure, the group does not sign for permits for its non-commercial group use of the National Forest although it is required under 36 C.F.R. § 251.50(c)(1) (2006).  (Doc. 4-2 at 3.)

The Rainbow Family did obtain permits in 2003, 2004 and 2005.  (Supp. Appx. 000052:12–16.)  However, in 2004 and 2005, the group did not confer with the Forest Service on appropriate sites.  (Supp. Appx. 000052:22–42:15.)  As a result, the group gathered on sensitive lands requiring protection.  *Id*.  In 2004, the group gathered on tribal ceremonial burial grounds.  *Id*.  And in 2005, it gathered in an area where use would have threatened endangered species.  *Id*.  Once the group learned of the threat to endangered species at the 2005 location, it did move away from the site.  (Supp. Appx. 000054:12–16.)

To attempt to lessen the impact on resources and public health of such a large gathering, the Forest Service dispatches an Incident Management Team to assist the host forest by providing extra personnel and various operations assistance so that the host district can continue to perform its normal duties.  (Supp. Appx. 000020:7–10:5.)  Additionally, in anticipation of the 2006 gathering, Forest Service personnel began to contact group members at the 2005 gathering to work with them to obtain a permit for the next year.  (Supp. Appx. 000023:19–24.)  However, despite their efforts to work with the group, no permit was obtained for the 2006 gathering.  (Supp. Appx.

000023:25–000024:5.)  One application for the Gathering was received, but it was denied because it was not received, as required, in advance of the Gathering and because of safety concerns.  (Supp. Appx. 000041:25–000042:8.)  The safety concern was in part due to the high fire danger resulting from 70 percent of the trees being dead in the area that Rainbow Family had chosen.  (Supp. Appx. 000053:20–23.)

By July 1, 2006, Defendant entered upon Routt National Forest land to participate in the Rainbow Family National Gathering.  Defendant did not, prior to or at that time, attempt to apply for a permit, noting that at the time of his arrival, there were already over 74 people gathered.  (Supp. Appx. 000087:8–11.)  For groups of this size, the regulations required advance permitting.  36 C.F.R. § 251.54(a) (2006).  On July 4, 2006, approximately 15,000 people were onsite.  (Supp. Appx. 000029:11–12.)

On July 1, 2006, at 6:00 p.m., four Forest Service officers were writing violation notices to other individuals when Defendant walked up to them.  (Supp. Appx. 000057:23–47:4.)  At that time, Defendant explained to one of the officers that Defendant wanted the officer to write him a ticket for use of National Forest land without a permit.  (Supp. Appx. 000058:21–000060:7.)  The officer issued the ticket.  (Supp. Appx. 000058:21–22.)  The officer stated at trial that, upon inspection of the ticket for correctness, Defendant remarked that "[i]t looks good.  It didn't look like it was going to be this good."  (Supp. Appx. 000060:1–7.)  While Defendant never applied for a permit, Defendant requested the ticket to use the violation for the purposes of challenging the

permit requirement.  (Supp. Appx. 000096:23–86:5.)

## SUMMARY OF THE ARGUMENT

Defendant is not entitled to a religious use defense to his violation of 36 C.F.R. 261.10(k).  First, Defendant is precluded from challenging the permitting regulations because he failed to attempt compliance with the rules that allegedly violate the Religious Freedom Restoration Act of 1993 ("RFRA").  Second, in addressing Defendant's challenge, the Magistrate Judge correctly ruled that the regulation placed no substantial burden on Defendant's freedom to exercise his religion.  Even assuming that substantial burden exists, the Forest Service has a compelling interest in promulgating and enforcing its non-commercial group use permitting requirements.

A failure to apply for a permit (where such an attempt would not have been futile) precludes a challenge that the permitting process violated constitutional rights.  However, such challenges may be brought in a criminal context.  Here, Defendant was not automatically ineligible for a permit and thus an application was not futile.  Additionally, Defendant had recourse to judicial review through the permitting process that he elected not to pursue.  By waiting to challenge the permitting process until violation, Defendant is circumventing the procedures already in place and is preventing the Forest Service from effectively protecting national forest resources, public health and safety, and from effectively allocating space among users.

Were Defendant to have standing to challenge the regulations here, no violation of RFRA occurred because the regulations place no substantial burden upon Defendant's free exercise of religion. RFRA requires that courts look to cases prior to *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), such as *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), for definitions of substantial burden. Sherbert found substantial burden where a government regulation forced a person to choose between abandoning her religious tenets and forfeiting the benefits the government would otherwise provide. *Sherbert*, 374 U.S. at 404. In this line of cases, substantial burden has not been found where there has been no coercion such that a person is forced to violate his religious tenets or where the government has not penalized religious activity.

Here, Defendant has not established that his free exercise of religion has been substantially burdened. The Forest Service did not coerce him into violating his faith by signing for a permit. Defendant and his group opted to knowingly participate in a gathering that violated regulations rather than gather on public lands other than national forest lands. Also, the process for suggesting sites with Forest Service input cannot have substantially burdened Defendant's free exercise of religion as the process was never set into motion due to Defendant's lack of a permit application. Further, the enforcement measures do not substantially burden Defendant's free exercise of religion as Defendant is not prohibited from practicing his religion in other public places.

Even assuming Defendant's free exercise of religion was substantially burdened, the Forest Service regulations serve compelling interests and are the least restrictive means by which to carry out those interests. It is well settled that the promotion of public health and safety serve compelling interests. Thus, religious acts that create a substantial threat to such interests can be regulated. Even religious acts that do not rise to the level of a substantial threat may be regulated by laws of general applicability where the government can demonstrate a compelling interest. That a regulation is the least restrictive means available is demonstrated when the regulation is both is narrowly tailored to its interests and that there are no better alternative means of achieving those interests.

The Forest Service's interests in protecting national forest resources, promoting public health and safety, and allocating space among the growing number of users of the National Forests have been held to be compelling. As discussed herein, this case is distinguishable from the recent *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 126 S.Ct. 1211, 1216–17 (2006). First, the Forest Service's interests are specifically and adversely affected by use of national forest land. Forest Service experience with the Rainbow Family shows that significant resource damage and significant danger to public health have occurred. Second, there is a specific need for uniformly enforcing the Forest Service regulations. Uniform enforcement of a signature requirement, a timeliness requirement, and in the ability of the Forest Service to provide

alternative sites - the three procedural requirements Defendant complains of - is the only way to maintain the functionality of national forest administration.

The Forest Service's regulations are also the least restrictive means available. In enacting its regulation, the Forest Service specifically addressed religious freedoms and drafted its regulations to serve only the interests of protecting forest resources, promoting public health and safety, and effectively allocating of space. Additionally, the alternatives that Defendant suggests would undermine the interests of the Forest Service.

For these reasons, the Court should hold that Defendant is not entitled to a religious use defense to his violation of 36 C.F.R. § 261.10(k) (2006). Defendant's conviction should be affirmed.

## ARGUMENT

### Introduction

In this appeal, Defendant does not dispute that he violated 36 C.F.R. § 261.10(k). Defendant clearly violated the rule. Rather, Defendant argues that under RFRA, 42 U.S.C. § 2000bb–2000bb-4 (2006), he is entitled to a religious use defense against the requirement that he obtain a permit under 36 C.F.R. § 251.50(a) (2006). Defendant incorrectly states that the Magistrate Judge improperly considered Defendant's defense solely as a First Amendment challenge rather than a RFRA challenge. The Magistrate Judge did address Defendant's RFRA claim, finding that no substantial burden was placed on Defendant's exercise of religion. Consequently, the Magistrate Judge did not need to

address the RFRA compelling interest test.  Notwithstanding the Magistrate Judge's ruling, the application of RFRA's compelling interest test to this case shows that even if Defendant's free exercise of religion was substantially burdened, the Forest Service's regulations serve a compelling interest in the least restrictive manner possible.

36 C.F.R. § 261.10(k) prohibits the "[u]se or occupancy of National Forest System land or facilities without special-use authorization when such authorization is required." 36 C.F.R. § 251.50(a) declares that, with the exception of specific authorized road use, timber and other forest product harvesting, grazing, and mineral extraction, "[a]ll uses of National Forest System lands, improvements, and resources . . . are designated 'special uses.'" 36 C.F.R. § 251.51 (2006) defines 'group use' as activity on national forest lands involving a group of 75 or more.  Such a group is required to obtain a special use authorization, also known as a permit.  36 C.F.R. § 251.50(c)(1).

In order to obtain a permit, an applicant must follow the proposal and application requirements of 36 C.F.R. § 251.54 (2006).  First, applicants must contact the appropriate Forest Service office as soon as possible in advance of the proposed activity.  36 C.F.R. § 251.54(a).  In a noncommercial use application, there are five required pieces of information.  36 C.F.R. § 251.54(d)(2)(i).  One of these requirements is designation of the person who will sign the permit on behalf of the group.  36 C.F.R. § 251.54(d)(2)(i)(E). Additionally, noncommercial group use applications must be received at least 72 hours in advance of the proposed activity.  36 C.F.R. § 251.54(g)(2)(iv).

For noncommercial group uses, the authorized Forest Service officer shall, to the extent practicable, provide guidance and information to the applicant regarding potential conflicts, application procedures, necessary qualifications, fee requirements, necessary permits, environmental and management considerations, special conditions, and necessary temporary use permits, among other things. 36 C.F.R. § 251.54(e)(3)(i)-(viii). Once the application is received, the Forest Service has 48 hours to deny the application. 36 C.F.R. § 251.54(g)(3)(i). There are eight criteria that, if met, require the Forest Service officer to grant an application. 36 C.F.R. § 251.54(g)(3)(ii)(A)-(H). One of these criteria is the designation of a person who will sign on behalf of the group. 36 C.F.R. § 251.54(g)(3)(ii)(H). If the officer denies an application under those eight criteria and there is an alternative time, place, or manner that will satisfy them, he must offer that alternative to the applicant. 36 C.F.R. § 251.54(g)(3)(iii). Also, if the applicant refuses to sign and accept the permit within 60 days and before the officer approves it, the application will terminate and be considered as denied. 36 C.F.R. § 251.62. A denial of an application under 36 C.F.R. § 251.54(g)(3)(ii)(A) through (H) is considered final agency action subject to judicial review. 36 C.F.R. § 251.54(g)(3)(iii).

Because the Defendant's group, the Rainbow Family, exceeded 75 people and in fact consisted of approximately 15,000 people by July 4, 2006, a permit was required. Defendant did not contact the Forest Service as soon as possible in advance of the gathering, nor did he apply for a permit at least 72 hours in advance. While one permit

application was submitted by another individual, it was denied because it was not in advance of the group's presence onsite and because there were safety hazards. Defendant never initiated the application process and the procedures requiring guidance, information, and review from a Forest Service officer could not occur. As a result, Defendant violated 36 C.F.R. § 261.10(k) for use of National Forest land without a required permit.

I.   **Defendant Is Not Entitled to a "Religious Use" Defense under Rfra Because Application of the Law in this Case Does Not Trigger Rfra Protection.**

   A.   **Issue Raised and Ruled upon:**

At trial, Defendant raised a religious use defense under RFRA to the charge of violation of 36 C.F.R. § 261.10(k). (Supp. Appx. 000066:21–23.) Defendant claimed that the Forest Service had substantially burdened his exercise of religion and could not show a compelling interest in enforcing 36 C.F.R. § 261.10(k) and 36 C.F.R. § 251.54 against him. (Supp. Appx. 000090:14–000092:16.) At sentencing, the Magistrate Judge determined that "the permit requirement does not substantially burden the exercise of [Defendant's] religious beliefs. . . . [T]he Religious Freedom Restoration Act . . . [is not] violated by 36 CFR 261." (Supp. Appx. 000092:23–000093:7.) Having directly decided that RFRA was not violated here, the Magistrate Judge went on to hold that the Forest Service did not selectively enforce the regulations and that there is a legitimate public interest in mitigating the damage to the forest. (Suppl. Appx. 000093:8–16.) The Magistrate Judge concluded that the government established, beyond a reasonable doubt,

that Defendant was present in Routt National Forest as a part of a group for which there was no special-use permit as required pursuant to 36 C.F.R. § 261.10(k). (Supp. Appx. 000093:22–83:6.)

   **B.    Standard of Review:**

The scope of this appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D) (2006).

RFRA requires demonstration of a substantial burden on the free exercise of a sincere religious belief, with such burden permitted only if the government demonstrates a compelling interest that is the least restrictive means available to achieve those interests. 42 U.S.C. § 2000bb-1(a)–(b). The question of whether RFRA has been violated, including the question of a substantial burden, is reviewed de novo. *United States v. Myers*, 95 F.3d 1475, 1482 (10th Cir. 1996).

Similarly, the analysis of a compelling interest is also reviewed de novo because it is a question of law. *United States v. Hardman*, 297 F.3d 1116, 1127 (10th Cir. 2002). Questions of law are reviewed de novo. Id. at 1120 (citing *United States v. Smart*, 278 F.3d 1168, 1172 (10th Cir. 2002)).

The Tenth Circuit has not decided the proper standard of review for a determination that a law is the least restrictive means available. *O Centro Espirita Beneficente Uniao Do Vegetal v. Gonzales*, 342 F.3d 1170, 1177 (2003), aff'd on reh'g, 389 F.3d 973 (10th Cir. 2004), aff'd and remanded, 126 S.Ct. 1211 (2006)). Factual

findings underlying the court's legal conclusions are reviewed for clear error. *O Centro*, 342 F.3d at 1177; see also *Hardman*, 297 F.3d at 1120 (questions of fact also reviewed for clear error) (citing *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001)).

**C.    Discussion:**

Defendant cannot raise a RFRA claim in this case because he failed to submit an application for a permit.  Notwithstanding this failure, the Forest Service's enforcement of 36 C.F.R. § 261.10(k) is not foreclosed by RFRA.  RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates that its actions burdening a person (1) are in furtherance of a compelling governmental interest and (2) are the least restrictive means to further that interest.  42 U.S.C. § 2000bb-1(a)–(b).

Congress enacted RFRA in reaction to the Supreme Court decision in *Employment Division*, *Department of Human Resources of Oregon v. Smith* in order to implement a more restrictive compelling interest standard of review of government actions.  This standard necessarily requires analysis of the statute as applied to the particular individual raising a claim of substantial burden.  *O Centro*, 126 S.Ct. at 1220–21.

In this case, no substantial burden was placed upon Defendant's exercise of religion.  Even if substantial burden could be shown, the Forest Service's enforcement of the regulation furthers compelling governmental interests through "(1) [p]rotection of forest resources and facilities; (2) promotion of public health and safety; and (3)

allocation of space in the face of greater competition for the use of National Forest System Lands."  Rules and Regulations, Dept. of Agriculture, Forest Service -- Land Uses and Prohibitions, Final Rule, 60 Fed. Reg. 45,258 at 45,262 (Aug. 30, 1995) (codified at 36 C.F.R. §§ 251 & 261) [hereinafter Final Rule].  In addition, the permitting and enforcement methods are the least restrictive means of furthering those interests.

Defendant asserts that the Magistrate Judge improperly applied RFRA by stating that Defendant's religious use defense was a First Amendment challenge to the regulations.  (Opening Br. 7.)  This assertion is incorrect.  The Magistrate Judge properly applied RFRA by holding that there was no substantial burden placed upon Defendant's free exercise of religion.  Because of the Magistrate Judge's finding, he did not need to reach the question of whether the Forest Service proved it had a compelling interest furthered in the least restrictive manner available.  However, the Magistrate Judge did discuss the Forest Service's legitimate interests in his findings, noting that prior cases have addressed the regulations in question.  (Supp. Appx. 000093:13–21.)

1.    **Defendant's Failure to Apply for a Permit Precludes His Ability to Raise a Rfra Defense in this Case.**

Defendant is precluded from challenging special use permitting requirements because he did not attempt to apply for a permit.  A failure to apply for a permit precludes a claimant's challenge that a permitting process harmed his constitutional rights, unless it would have been futile for the claimant to apply.  *Hardman*, 297 F.3d at 1121.  However, where a failure to apply for a permit results in criminal charges, a constitutional challenge

-14-

is not precluded. *United States v. Tawahonga*, 2006 WL 2619174 at *6 (D. Ariz. 2006).

Because this is a criminal case, Defendant may not be precluded from raising his RFRA claim. However, the facts suggest that Defendant's claim should be denied. The Forest Service permitting process has a built-in process for immediate review of application denials. 36 C.F.R. § 251.54(g)(3)(iii). Had Defendant applied for his permit and been denied for lack of signature, for example, he would have been entitled to judicial review of the decision at that time. By failing to apply for a permit, and actually asking an officer to ticket him so he could challenge the regulations, Defendant is attempting to circumvent the process for contesting validity of the regulations. Because Defendant intentionally chose this route, the Forest Service was prevented from protecting the national forests resources, from promoting the public health and safety, and from efficiently allocating space for use by the public.

**2.     Were Defendant Permitted to Raise RFRA, His Prima Facie Case Is Not Satisfied Here Because No Substantial Burden Was Placed upon Defendant's Exercise of Religion.**

Defendant has not met his burden of demonstrating a prima facie claim under RFRA and therefore does not trigger RFRA's compelling interest test. To meet his burden, Defendant is required to show that the Forest Service imposed a substantial burden on his sincere exercise of religion. *Kikimura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001). Defendant asserts that the Forest Service has substantially burdened his exercise of religion through the signature requirement, the timeliness requirement, and the

site selection process of 36 C.F.R. § 251.54, as well as through the enforcement measures of 36 C.F.R. § 261.10(k). (Doc. 14 at 15-16, 19-21.) The Government takes no position as to whether Defendant has demonstrated a sincere religious belief. Assuming, for the sake of argument, that sincerity of belief has been demonstrated, these regulations have imposed no substantial burden upon Defendant's religious exercise.

Although RFRA does not define "substantial burden," Congress expected courts to refer to free exercise cases prior to Smith when determining whether a substantial burden has been imposed. *Navajo Nation v. U.S. Forest Serv.*, 408 F. Supp. 2d 866, 903 (D. Ariz. 2006) (citing S.Rep. No. 103-111 at 8-9 (1993)). Specifically, RFRA "restore[s] the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) . . . to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1).

The Supreme Court in Sherbert determined that a state unemployment compensation commission's denial of benefits to an applicant was a burden on the applicant's free exercise of religion because the applicant's ineligibility resulted from the practice of her religion. *Sherbert*, 374 U.S. at 404. The applicant's ineligibility stemmed from the fact that she failed to accept available work offered to her. *Id*. at 401. The applicant claimed that accepting the available employment would prevent her from adhering to her faith's Saturday Sabbath Day, a day on which she could not work. *Id*. at 399-40. As a result, the commission's decision "force[d the applicant] to choose between

following the precepts of her religion and forfeiting benefits [otherwise provided under the compensation act] . . . and abandoning one of the precepts of her religion in order to accept work." *Id*. at 404.  The Court noted that forcing a decision between forfeiture of benefits and abandoning religious tenets is analogous to imposing a fine against the applicant because of her Saturday worship.  *Id*.

The facts of this case more closely align with the facts of the *Navajo Nation* case which applies RFRA.  In *Navajo Nation*, the court held that the Forest Service did not substantially burden the Native American group's free exercise of religion under RFRA.  *Navajo Nation,* 408 F. Supp. 2d at 904–05.  The court determined that a government land management decision "will not be a 'substantial burden' absent a showing that it coerces someone into violating his or her religious beliefs or penalizes his or her religious activity." *Id*. at 904.  In *Navajo Nation*, the Forest Service's land management decision to allow facility upgrades to an Arizona ski resort was determined not to be a substantial burden upon the groups' free exercise of religion, especially given that the Forest Service guaranteed continued access to the areas in question.  *Id*. at 905.  There was no objective evidence of impact to natural resources or religious areas or ceremonies; rather, the groups only asserted a perceived religious impact.  *Id*.  As a result, the subjective claim of impact was insufficient to determine a substantial burden.  *Id*.  Further, if the opposite result had been reached, the Forest Service's ability to manage the vast amounts of public lands considered sacred would be "left in a precarious situation." *Id*.

Similarly here, Defendant's free exercise of religion is not substantially burdened because he is not penalized for his religious beliefs. See Final Rule, 60 Fed. Reg. at 45,260. The signature and timeliness requirements do not coerce Defendant into violating his religious tenets. While Defendant's religion may prohibit him from signing anything on behalf of the Rainbow Family. Defendant does not show that gatherings must be held on National Forest land as opposed to any other public place. *See United States v. Kalb*, 234 F.3d 827, 831 (3d Cir. 2000). Additionally, just as in *Navajo Nation*, a determination that the regulations are coercive would leave the Forest Service in a position where it could not effectively manage its public lands.

Defendant contends that the Forest Service's site selection process burdens his free exercise of religion because the Forest Service is "loathe to permit any site not suggested by [the Forest Service]." (Doc. 14 at 16–17.) Defendant correctly states that it is for the permit applicant to propose the site for use under 36 C.F.R. § 251.54(d)(2)(i)(B). (Doc. 14 at 16.) However, if no permit has been filed, the Forest Service's duty to suggest alternative sites is not triggered because it only arises in the event of a denial of a group use application. 36 C.F.R. § 251.54(g)(3)(iii). Here, Defendant did not file a permit application, the actions required in the regulation were not triggered, and thus, no burden was imposed by the Forest Service by its site selection preferences. The site selection methods that Defendant criticizes are voluntary attempts by the Forest Service to work with the Rainbow Family and assist the group in complying with permitting requirements.

-18-

In sum, Defendant's right to free exercise of religion is not substantially burdened. As a result, protection under RFRA is inapplicable in this case and Defendant is not entitled to a religious use defense.

3.    **Even If a Prima Facie Case under Rfra Is Presented Here, the Burden Is Justified Because 36 C.f.r. § 261.10(k) and 36 C.f.r. § 251.54 (1) Further Compelling Governmental Interests and (2) Are the Least Restrictive Means of Doing So.**

Even if the Court were to find a prima facie violation of RFRA here, the Government has a compelling interest in protecting forest resources, promoting public health and safety, and allocating space among the growing number of users of the National Forests. See Final Rule, 60 Fed. Reg. at 45,262. In addition, the signature requirement and the timeliness requirement imposed by 36 C.F.R. § 251.54, as well the penalty imposed for violation of 36 C.F.R. § 261.10(k), are the least restrictive means of accomplishing these necessary protections while also protecting Defendant's rights. As a result, these regulations satisfy RFRA's exception.

a.    **The Forest Service Regulations Serve Compelling Interests.**

The Forest Service regulations in question here serve interests long held to be compelling: protecting the public's health, safety, and general welfare. *See*, e.g., *Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972) (noting that even religious based activities of individuals are subject to state regulation to "promote health, safety, and general welfare."). It is well settled that while religious freedoms are protected by the First Amendment of the United States Constitution, not all religious acts are entirely free from

governmental regulation.  *See Sherbert*, 374 U.S. at 403.  Religious acts that have faced

regulation have been those that created a "substantial threat to public safety, peace or

order."  *Id*.  Where a burdened religious act does not create such a threat, incidental

burdens on free exercise of religions must be justified by a compelling governmental

interest.  *Id*.  For example, in *Sherbert*, the welfare applicant's conscientious objection to

Saturday work did not rise to an act that created a substantial threat to safety.  *Id*.

However, religiously grounded conduct must often be subjected to broad police power

when necessary to promote the health, safety, and general welfare.  *Wisconsin v. Yoder*,

406 U.S. at 220.

### (1) *O Centro* Guides the Compelling Interest Analysis in this Case.

A thorough discussion of *O Centro*, 126 S. Ct. 1121, is instructive to analysis of

the case at hand because it applies the RFRA compelling interest test.  *O Centro* is

especially instructive because its facts are distinguishable from this case.  The *O Centro*

Court held that the government did not meet the compelling interest test and thus did not

justify the substantial burden placed upon an Amazonian religious sect by enforcement of

the Controlled Substances Act ("CSA").  126 S.Ct. at 1224.  The government had

unsuccessfully argued that the CSA served a compelling interest in protecting the public

health and preventing increased use of a dangerous hallucinogen used by the sect.  The

government also unsuccessfully argued that for the regulations to be effective, a uniform

system of enforcement that allowed no exceptions was required.  *Id*. at 1220.

As a part of its faith, this religious sect received communion by drinking a tea made in part from a plant containing a controlled hallucinogen. *Id*. at 1217. Because the CSA classified this hallucinogen as a Schedule I banned substance, United States Customs inspectors seized a shipment of the tea and threatened the sect with prosecution. *Id*. The religious sect subsequently filed the underlying suit to seeking declaratory and injunctive relief alleging that applying the CSA to their use of the tea violated RFRA. *Id*. The trial court granted the preliminary injunction, which was then affirmed by the appellate court. *Id*. at 1218. The burden of a sincere exercise of religion was conceded by the government, and thus the application of RFRA in *O Centro* focused upon the Act's compelling interest test. *Id*. at 1217.

There are two primary reasons the *O Centro* court rejected the government's argument that protecting the public health and preventing increased use of the dangerous hallucinogen through a uniform system of enforcement served a compelling governmental interest. *Id*. at 1221–24. First, a proper demonstration of a compelling interest requires proof that the government's interest is adversely affected by allowing the specific use in question, thus requiring a case-by-case contextual determination. *Id*. at 1220–21 (citing *Yoder*, 406 U.S. at 213, 221, 236). As a result, the mere invocation by the government of the harms of Schedule I substances did not sufficiently address the harms of the specific use of the tea by the religious sect. *Id*. at 1221. The insufficiency of this general statement of harmfulness was reinforced by the fact that the CSA allowed waiver of the

requirements if "consistent with the public health and safety." *Id*. In fact, requirements had been waived for religious use once before to allow use of the Schedule I substance peyote by the Native American Church. *Id*. at 1221–22. Further, Congress did not specifically consider the harms presented by the religious sect's use of the tea when it classified the hallucinogen under the CSA. *Id*. at 1221. Based on these facts, the Court concluded that the government had not met its burden as required under RFRA to show that the CSA would be adversely affected by allowing the religious sect's use of the tea. *Id*.

Second, the government's concern that it must have a uniform system of enforcement was undermined (1) because a religious exception to the CSA already existed and (2) because a general interest in uniformity is a slippery slope argument that cannot justify a substantial burden without a demonstration that the specific interest served by the rule would be undermined by allowing the particular use. *Id*. at 1222–23. There was no evidence that the peyote exception "undercut" the government's enforcement of non-Indian peyote use. *Id*. at 1223.

Further, a general interest in uniformity is itself insufficient as a compelling interest. *Id*. Rather, a "compelling interest in uniform application of a particular program [is demonstrated] by offering evidence that granting the requested religious accommodations would seriously compromise its ability to administer the program." *O Centro*, 126 S. Ct. at 1223 (citing *United States v. Lee*, 455 U.S. 252 (1982); *Braunfield v.*

*Brown*, 366 U.S. 599 (1961)).

For example, in *Lee*, religious challenges to the tax system could not be accepted because the system would not function without mandatory participation. *O Centro*, 126 S. Ct. at 1223 (citing *Lee*, 455 U.S. at 258, 260). In *Braunfield*, the very purpose of a Sunday closing law providing "a uniform day of rest for all workers" would be defeated by allowing an exception because it would give those excepted an economic advantage over those prohibited from opening. *O Centro*, 126 S. Ct. at 1223 (citing *Braunfield*, 366 U.S. at 608–09; *Sherbert*, 374 U.S. at 408 (discussing *Braunfield*)).

Comparing these cases to *O Centro*, the Court noted that the government's general desire for uniformity to preclude exceptions did not rely specifically on the needs of the CSA statutory program, but was instead an argument that could be raised to "any RFRA claim for an exception to a generally applicable law." *Id*. Claiming that making one exception will require making exceptions for everyone did not specifically demonstrate that excepting the religious sect's use of the hallucinogen would cause administrative harm to the CSA. *Id*. As a result, this general interest was insufficient to show specific adverse effects to CSA enforcement by allowing this specific exception.

> **(2)     This Case Is Distinguishable from O Centro Because the Defendant's Failure to Obtain a Permit Adversely Affects the Forest Service's Interests and Causes Administrative Harm.**

This case is distinguishable from *O Centro* because the regulations that Defendant complains of serve recognized compelling interests not compromised by the concerns

addressed in *O Centro*.  First, the promulgation of the Forest Service regulations specifically address the likely harms from Defendant's and his group's use of the National Forest Land without a permit.  Second, this uniform system of enforcement is necessary, not for the general interest of having uniformity, but because exceptions would cause administrative harm by rendering the Forest Service incapable of carrying out its mandate to protect the national forests and regulate their use.

In promulgation of revisions to the rules governing noncommercial group uses, the Forest Service noted that it "has a mandate to protect the 155 national forests and regulate their occupancy and use for all members of the public."  Final Rule, 60 Fed. Reg. at 45,262 (citing 16 U.S.C. 472, 551).  With this mandate, the Forest Service established three significant interests served by promulgating this particular rule: "(1) protection of forest resources and facilities; (2) promotion of public health and safety; and (3) allocation of space in the face of greater competition for the use of National Forest System Lands."  *Id*.  These interests have been recognized by courts as compelling. *Yoder*, 406 U.S. at 220 (exercise of state power to "promote the health, safety, and general welfare"); *Navajo Nation*, 408 F. Supp. 2d at 906 (finding a compelling interest in (1) selecting the best alternative for achieving multiple use mandate under the National Forest Management Act, (2) managing public land for recreational uses as integral part of mission in managing National Forests, (3)  protection of public safety through ski resort upgrades, and (4) compliance with the Establishment Clause).

**(a)      A Permitting Exception in this Case Would Adversely Affect the Forest Service's Interests.**

The context for analysis in this case is Defendant's participation in the RFLL gathering.  See *O Centro*, 126 S. Ct. at 1221 (noting that strict scrutiny requires case specific analysis). Defendant is participating in this large group event and thus, is a part of the group the Forest Service has past experience with.  As a result, his actions constitute the actions of a member of the Rainbow Family group and are the actions that the Forest Service addresses when justifying the application of both 36 C.F.R. § 251.54 and § 261.10(k) in this case.  Thus, as Defendant states, "to prove the legitimacy of its interest, the government would be required to prove that the RFLL, specifically, poses a potential for significant damage to National Forest lands."  (Doc. 14 at 6.)

The regulations under 36 C.F.R. § 251 and § 261 specifically address the potential harms from Rainbow Family's unpermitted large non-commercial group use.  Due to a long history of Defendant's group's use of National Forest lands, the Forest Service has significant experience and understanding of the potential harms caused by the group's use. In publishing the Final Rule amending the noncommercial group use requirements to resolve constitutional concerns about the rules, the Forest Service chronicled a long history of serious and harmful problems on national forest lands caused by the Rainbow Family during Rainbow Family gatherings.  Final Rule, 60 Fed. Reg. at 45,263–65.

The Rainbow Family has generally encouraged respectful use of natural resources and proper sanitation procedures.  *Id*. at 45,263; (Gov. Ex. 1, 3-8).  However, experience

has shown that the RFLL annual Gatherings, which can attract as many as 20,000 people, have considerably impacted the sites used as well as the public health and safety. Final Rule, 60 Fed. Reg. at 45,263–65. For example, following the Gatherings in 1987, 1990, 1991, and 1992, the Forest Service had to completely rehabilitate acres of fields and paths where concentrated use resulted in soil compaction and loss of vegetation. *Id*. at 45,263–64. In addition after some of the gatherings, large volumes of trash had to be picked up by the Forest Service. *Id*. Further, proper care of latrines has been very inconsistent from year to year. In 1987, latrines in outlying camps were not covered, leaving human waste exposed. *Id*. at 45, 263. In 1990, latrines were also left uncovered. *Id*. at 45,263–64. The most extreme case occurred in 1991 where "officials found a large amount of human waste scattered throughout the woods, even though a sufficient number of well-constructed latrines were distributed throughout the Gathering site." *Id*. at 45, 264.

Of significant importance is the history of public health threats resulting from some of the Gatherings. The 1987 Gathering provides the most dramatic example of a public health threat.

> At the site of this Gathering, many Rainbow Family members did not boil water from springs that were high in fecal coliform bacteria. During the week of July 1-4, many people had diarrhea and fever. As people at the Gathering became sick, they used the latrines less and less. Uncovered human wastes were scattered where people traveled and camped. Many people went barefoot and their stepping in uncovered human wastes helped transmit the disease. Hospitals in two states notified the Centers for Disease Control . . . that cases of confirmed shigellosis had been detected among people who had attended the Gathering. Shigellosis is a

highly contagious form of dysentery . . . transmitted by direct or indirect fecal-oral contact from one person to another or by contaminated food or water. Individuals primarily responsible are those who fail to clean adequately their fecally contaminated hands.
. . . .

Two CDC doctors visited the site of the Gathering the week after July 4 and interviewed a large percentage of the Rainbow Family members remaining at the site. The doctors estimated that 65 percent of those people had shingellosis. At the doctors' suggestion, the Forest Service closed the site to other members of the public from July 15 to 29 for health reasons. By the middle of August, 25 states reported outbreaks of shigellosis traced to people who had attended the Gathering. In early October, cases of the disease were still being reported in 25 states.

*Id*.  A less dramatic but still problematic public health threat occurred at the 1992 gathering.  *Id*.  Although the RFLL had promised otherwise, the RFLL group assigned to provide medical care to gatherers could not provide more than first aid, had limited supplies, and had no protocol for emergencies.  *Id*.  As a result, 46 people from the Gathering had to go to the local hospital for treatment.  *Id*. There was an added public safety concern at the 2006 gathering site in this case due to the site's high fire danger.

From the Forest Service's experiences with the RFLL, it is not difficult to establish the potential harms to natural areas and public health and safety that the RFLL's large gatherings may cause.  As a result, the Court's concerns in *O Centro* regarding proof of case-specific harms to administrative interests are not at issue here.  There is a sufficient and dramatic factual basis for the Forest Service's requirement in this particular instance that Defendant, as a member of RFLL, must have a permit prior to use of national forest land.

**(b)      An Exception to Uniform Permitting Requirements
Would Cause Administrative Harm.**

Unlike *O Centro*, where there was a general, unspecified interest in uniform

application of a rule, there is a specific need in this case for uniformity in maintaining the

functionality of national forest administration.  The government's argument for uniformity

failed in *O Centro* because the CSA expressly allowed for exceptions and because the

government advanced only a slippery-slope argument of a general interest in uniformity.

In contrast here, no exceptions are allowed for.  Also, a uniform system of enforcement is

essential here because the Forest Service's administrative system for protecting the

national forests and regulating their use would not function were it to provide exceptions

to the regulations that Defendant claims are substantially burdensome, namely the

signature requirement, the timeliness requirement, and the site selection "process" of 36

C.F.R. § 251.54, as well as through the enforcement measures of 36 C.F.R. § 261.10(k).

(Doc. 14 at 15–17.)

**i.      The Signature Requirement Furthers the Forest
Service's Management Goals.**

The signature requirement does further the Forest Service's ability to protect the

national forests and regulate their use in the furtherance of the public health and safety.

This signature is tied to the requirement of identification and contact information for an

agent of the group applying for a special use permit. 36 C.F.R. § 251.54(d)(2)(i)(E).  It

gives legal effect to the permit and "subjects the group to the authorization's terms and

conditions." Final Rule, 60 Fed. Reg. at 45,274. Further, the Forest Service needs this information so that it has someone to contact regarding special use administration. *Id*. When no such contact is designated, the Forest Service must deal with individual members and subgroups, making it difficult for the agency to obtain consistent commitments from the whole group. *Id*. If the Forest Service had to deal with 15,000 individuals, the size of the Gathering this year, describing the undertaking as difficult understates the problem.

In prior Rainbow Family cases that addressed First Amendment challenges under a significant interest standard, courts have also held the signature requirement as necessary. Without the ability of the Forest Service to impose the signature requirement, thereby giving a permit legal effect and subjecting the whole group to the terms and conditions under the permit, "the interests served by the signature requirement in particular would be served less effectively were that requirement eliminated." *U.S. v. Kalb*, 234 F.3d 827, 833 (3d Cir. 2000) (citing *U.S. v. Masel*, 54 F. Supp. 2d 903, 919 (W.D. Wis. 1999) ("Without the ability to impose terms and conditions on all members of a group, the government would clearly be extremely hampered in its ability to achieve any of its interests.")) Even under the compelling interest test here, the legitimacy of a signature requirement is maintained. As stated in *Kalb*, allowing anything less than the signature requirement would prohibit the Forest Service from protecting the public's interest.

### ii. The Timeliness Requirement Furthers the Forest Service's Management Goals.

The timeliness requirement similarly furthers the three compelling interests of the government in resource protection, promotion of the public health and safety, and allocation of space among users. Timeliness in obtaining a permit furthers the administrative functionality of the Forest Service by giving sufficient advanced warning of personnel and equipment needs to accommodate events. Despite the lack of an advance application and notice, the Incident Management Team attempts to mitigate the impact of the Rainbow Family gatherings on host forests. However, these attempts are significantly stifled because the Rainbow Family does not publish its proposed gathering location until a month prior to the event and only notifies the Forest Service of the location upon the group's arrival. Advance notice would help the Forest Service advise and assist the group in appropriately selecting sites, preparing appropriate medical facilities, and monitoring appropriate sanitation facilities, all in the furtherance of resource protection, public health and safety, and space allocation. Without such notice, the Forest Service is significantly hampered in carrying out such duties.

### iii. The Regulation of Site Choices by Groups Furthers the Forest Service's Management Goals.

Because the Rainbow Family did not confer with the Forest Service on appropriate sites even when it did obtain permits in 2004 and 2005, the group gathered in highly sensitive areas such as tribal ceremonial burial grounds, and in 2005, in an area where use

would have threatened endangered species.  The 2006 Gathering at issue here also

presented concerns for the natural area as well as for public safety due to fire concerns.

Requiring a permit in advance of the event is a necessary step to furthering the protection

of resources and public health and safety.  If the event has already begun and the chosen

area is sensitive, the Forest Service is prevented from carrying out its interests as the area

even if the group moves away from the site, as in 2005,  because the potential for damage

is significantly heightened or the damage has already been done.

### iv.    The Enforcement of These Regulations Furthers the Forest Service's Management Goals.

Because of the Forest Service's administrative needs, exceptions to the permitting

requirements here would severely impair the Forest Service's ability to carry out its

mandate and protect the natural areas and public health and safety.  Were exceptions to be

made, not only would the Forest Service be prevented from monitoring its natural areas

and the public health, but it would be prevented from allocating space areas and would be

helpless to monitor overuse.  Unlike the government's argument in *O Centro*, this is not

simply a general interest in uniformity with the concern that if one gets an exception then

everyone will.  Maintenance of the uniformity of these regulations is crucial to enabling

the Forest Service in carrying out its functions.

### b.    The Forest Service's Regulations Are the Least Restrictive Means by Which to Further its Interests.

The specific aspects of the permitting requirements that Defendant challenges, the

signature and timeliness requirements, the site choice regulation, and the enforcement method are all part of a special use authorization requirement that is the least restrictive means to achieve the Forest Service's interests in resource protection, protection of public health and safety, and proper allocation of space for use.

In demonstrating that regulations are the least restrictive means available, the government bears the burden of proof and building a record for review. *United States v. Hardman*, 297 F.3d at 1130; *Sherbert*, 374 U.S. at 407. This burden is not satisfied by mere speculation of how the challenged regulation furthers the government's interests. *Hardman*, 297 F.3d at 1130, 1132–33.

Instead, the government must show that the regulation is narrowly tailored to advancing the government's interests and that there are no alternative, less restrictive means of achieving that interest. *See id*. at 1130, 1132 (finding that because of the poor record from the cases below, the government failed to demonstrate these factors); *Navajo Nation*, 408 F. Supp. 2d at 907 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005), for the determination that burden is met by a demonstration that the government "considered and rejected the efficacy of less restrictive means before adopting the challenged practice"). This analysis is derived from the compelling interest tests of the pre-Smith cases that RFRA specifically restored. *Hardman*, 297 F.3d at 1129. In the context of these cases, "'least restrictive means' is a severe form of the more commonly used 'narrowly tailored' test." *Id*. at 1129–30 (quoting *Sherbert*, 374 U.S. at

407, which requires a demonstration that no alternative regulations would address the regulated activity without infringing First Amendment rights). As such, not only must the regulations be narrowly tailored, they must also be the least restrictive means of achieving the compelling interest. *Id*. at 1130.

However, in proving that the regulation is narrowly tailored, the government need not refute "every conceivable option." *Navajo Nation*, 408 F. Supp. 2d at 907 (quoting *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996)). Once the government satisfies its burden, it is up to the challenger to demonstrate that there are alternative less restrictive means. *Hamilton*, 74 F.3d at 1556.

**(1)    The Regulations Are Narrowly Tailored to Advance the Forest Service's Interests.**

In issuing its Final Rule amending the noncommercial group use requirements to resolve constitutional concerns, the Forest Service noted that it specifically and narrowly tailored the requirement to meet the specific governmental interests of resource protection, protection of public health and safety, and allocation of space. Final Rule, 60 Fed. Reg. at 45,259–60. The current criteria for evaluating applications for noncommercial group use are specific and content neutral. For example, in the criteria for granting a permit application, "considerations of public safety must not include concerns about possible reaction to the users' identity or beliefs from non-members of the group that is seeking an authorization." 36 C.F.R. § 251.54(g)(3)(ii)(F). A note following Section 251.56(a)(1)(ii)(G) states that discretionary terms an authorized officer

can impose for the protection of public interest can only be made to further the three explicitly stated interests of resource protection, protection of public health and safety, and resource allocation. 36 C.F.R. § 251.56(a)(1)(ii)(G). These restrictions narrowly confine the power an authorized officer has in evaluating a permit application and restricts the officer's determinations only to the stated interests and nothing else. As such, the rule could not be defined more narrowly.

**(2)     There Are No Alternative less Restrictive Means for Achieving the Forest Service's Interests.**

The Forest Service has extensively addressed and rejected proposed alternative means because the alternatives significantly decrease the agency's ability to advance its compelling interests. Defendant argues that a resource management strategy utilizing mutual operating plans have been successful in the past for the Forest Service and RFLL. (Doc. 14 at 19.) Defendant also suggests that another less restrictive alternative would be to issue separate camping permits to individuals and small groups, thereby allowing people to sign the permits on behalf of themselves without violating the religious restriction on representing the group. *Id*. at 19, 23. A third alternative Defendant raises is that the Forest Service could issue the group-use permit without the requirement of a signature. *Id*. at 23.

The alternatives that Defendant suggests are not as effective as the current method of permitting and would significantly impair the Forest Service's ability to advance its interests. The resource management strategy that Defendant suggests has decidedly not

been successful in the past. The Forest Service specifically notes that informal

agreements with an individual or subgroup are not subsequently respected by other

groups. Final Rule, 60 Fed. Reg. at 45,267. Thus, it has been difficult to get

commitments from the Rainbow Family on issues regarding the gathering. *Id*. This

results in the need to readdress the same issues at every encounter with a Rainbow Family

member, severely limiting the ability of the Forest Service to efficiently achieve its

interests. *Id*. Further, Defendant does not specifically describe how his vision of mutual

operating plans would function and serve the interests that the Forest Service must meet.

Issuing separate camping purposes is also not a reasonable alternative to a group

use permit because it would remove the Forest Service's ability to regulate the group

activity. The reason for a group use permit is to regulate large group use national forest

lands because in the Forest Service's experience, large groups have greater impact on land

than individuals. *Id*. at 45,262. These large groups, especially groups that number in the

thousands, have a greater capacity to affect the preservation of natural resources, to affect

public health and safety, and to affect the Forest Service's ability to effectively manage

use of national forest lands by many members of the public. To say that an individual

camping permit would equally satisfy these interests is misplaced. The individuals, all

15,000 of them, intended to gather together in a concentrated area as a group, thereby

triggering the need for special attention by the Forest Service to efficiently further its

interests. Issuance of individual permits would defeat the purpose of the special use

permit process of effectively managing national forest service lands.

Eliminating the signature requirement is also not an adequate alternative. The requirement of a signature for a special use permit is vital to carrying out the Forest Service's need to regulate group use. If no group representative is designated, the Forest Service has no point contact for the group and is hampered in its ability to efficiently address issues raised by the use, especially in the event of an emergency. See Final Rule, 60 Fed. Reg. at 45,274. Further, without a group representative, a permit is not given legal effect and the group is thus not made responsible for its actions. *Id*. This effectively destroys the Forest Service's ability to manage public lands.

The Forest Service has narrowly tailored its regulation to specifically enable it to carry out its three interests of natural resource protection, promotion of the public health and safety, and allocation of space. There are no less restrictive alternatives to the regulations now in place that would sufficiently achieve these interests because these regulations are already the absolute minimum in requirements.

## CONCLUSION

Defendant is not entitled to a religious use defense for his violation of 36 C.F.R. § 261.10(k). Defendant did not attempt to apply for a permit under these regulations, and thus has not triggered the allegedly violative laws. Notwithstanding the failure to apply for a permit, the regulation does not substantially burden Defendant's free exercise of religion. Even assuming that it did, the Forest Service has compelling interests in

protecting national forest resources, promoting public health and safety, and efficiently allocating space among users.  The regulations are the least restrictive means by which to further these interests.  For the foregoing reasons, this Court should affirm Defendant's conviction for failure to obtain a permit for non-commercial group use.

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not believe that oral argument would materially assist the Court in its determination of this appeal.

Dated this 22nd day of November, 2006.

Respectfully submitted,

TROY A. EID
UNITED STATES ATTORNEY


By:     s/HABIB NASRULLAH
        Assistant United States Attorney
        Colorado Bar # 23063
        1225 17th Street, Suite 700
        Denver, CO 80202
        (303) 454-0100
        E-mail: habib.nasrullah@udoj.gov
        Attorney for Plaintiff-Appellee

## CERTIFICATE OF DIGITAL SUBMISSIONS

All required privacy redactions, if any, have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the written document filed with the Clerk.

The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program TREND MICRO Office Scan for Windows 2003/XP/2000/NT, Version 6.5, Engine Version 7.510, Virus Pattern File 3.949 dated 11/22/06 and, according to the program, are free of viruses.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


s/Habib Nasrullah
_____Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 9335 words.  I relied on my word processor, with WordPerfect Version 9 software, to obtain the count.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

s/Habib Nasrullah
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2006, two true and correct written copies of the **APPELLEE'S ANSWER BRIEF** were mailed postage prepaid and properly addressed to:

Scott Sowka
2521 Courtland Ct.
Fort Collins, CO 80526

also a copy of **APPELLEE'S ANSWER BRIEF** was sent electronically by e-mail to: madpoet418@yahoo.com.

s/Habib Nasrullah
HABIB NASRULLAH
Assistant United States Attorney
Colorado Bar # 23063
1225 17th Street, Suite 700
Denver, CO 80202
(303) 454-0100
E-mail: habib.nasrullah@udoj.gov
Attorney for Plaintiff-Appellee