Forest Service before construction shall begin.

[3 FR 1953, Aug. 9, 1938]

DESIGNATION OF AREAS

### § 251.23  Experimental areas and research natural areas.

The Chief of the Forest Service shall establish and permanently record a series of areas on National Forest land to be known as experimental forests or experimental ranges, sufficient in number and size to provide adequately for the research necessary to serve as a basis for the management of forest and range land in each forest region. Also, when appropriate, the Chief shall establish a series of research natural areas, sufficient in number and size to illustrate adequately or typify for research or educational purposes, the important forest and range types in each forest region, as well as other plant communities that have special or unique characteristics of scientific interest and importance. Research Natural Areas will be retained in a virgin or unmodified condition except where measures are required to maintain a plant community which the area is intended to represent. Within areas designated by this regulation, occupancy under a special-use permit shall not be allowed, nor the construction of permanent improvements permitted except improvements required in connection with their experimental use, unless authorized by the Chief of the Forest Service.

[31 FR 5072, Mar. 29, 1966]

PETERSBURG WATERSHED

### § 251.35  Petersburg watershed.

(a) Except as authorized in paragraphs (b) and (c), access to lands within the Petersburg watershed, Tongass National Forest, as described in the Act of October 17, 1940 (54 Stat. 1197), is prohibited.

(b) Access to lands within the Petersburg watershed is hereby authorized, without further written approval, for the following routine purposes:

(1) The discharge of official duties related to management of the Tongass National Forest by Federal employees,

holders of Forest Service contracts, or Forest Service agents;

(2) The operation, maintenance, and improvement of the municipal water system by Federal and State officials and employees of the city of Petersburg; and

(3) Public recreational use of the Raven's Roost Trail for access to and from the Raven's Roost public recreation cabin and the Alpine Recreation Area.

(c) Any person who wishes to enter upon the lands within the watershed for purposes other than those listed in paragraph (b) must obtain a permit that has been signed by the appropriate city official and countersigned by the District Ranger.

(d) Unauthorized entrance upon lands within the watershed is subject to punishment as provided in 36 CFR 261.1b.

(e) The Forest Supervisor of the Stikine Area of the Tongass National Forest may authorize the removal of timber from the watershed under the regulations governing disposal of National Forest timber (36 CFR part 223). In any removal of timber from the watershed, the Forest Supervisor shall provide adequate safeguards for the protection of the Petersburg municipal water supply.

[53 FR 26595, July 14, 1988]

## Subpart B—Special Uses

AUTHORITY: 16 U.S.C. 460l–6a, 460l–6d, 472, 497b, 497c, 551, 580d, 1134, 3210; 30 U.S.C. 185; 43 U.S.C. 1740, 1761–1771.

SOURCE: 45 FR 38327, June 6, 1980, unless otherwise noted.

### § 251.50  Scope.

(a) All uses of National Forest System lands, improvements, and resources, except those authorized by the regulations governing sharing use of roads (§ 212.9); grazing and livestock use (part 222); the sale and disposal of timber and special forest products, such as greens, mushrooms, and medicinal plants (part 223); and minerals (part 228) are designated "special uses." Before conducting a special use, individuals or entities must submit a proposal to the authorized officer and must obtain a special use authorization from

300

the authorized officer, unless that requirement is waived by paragraphs (c) through (e)(3) of this section.

(b) Nothing in this section prohibits the temporary occupancy of National Forest System lands without a special use authorization when necessary for the protection of life and property in emergencies, if a special use authorization is applied for and obtained at the earliest opportunity, unless waived pursuant to paragraphs (c) through (e)(3) of this section. The authorized officer may, pursuant to §251.56 of this subpart, impose in that authorization such terms and conditions as are deemed necessary or appropriate and may require changes to the temporary occupancy to conform to those terms and conditions. Those temporarily occupying National Forest System lands without a special use authorization assume liability, and must indemnify the United States, for all injury, loss, or damage arising in connection with the temporary occupancy.

(c) A special use authorization is not required for noncommercial recreational activities, such as camping, picnicking, hiking, fishing, boating, hunting, and horseback riding, or for noncommercial activities involving the expression of views, such as assemblies, meetings, demonstrations, and parades, unless:

(1) The proposed use is a noncommercial group use as defined in §251.51 of this subpart;

(2) The proposed use is still photography as defined in §251.51 of this subpart; or

(3) Authorization of that use is required by an order issued under §261.50 or by a regulation issued under §261.70 of this chapter.

(d) Travel on any National Forest System road shall comply with all Federal and State laws governing the road to be used and does not require a special use authorization, unless:

(1) The travel is for the purpose of engaging in a noncommercial group use, outfitting or guiding, a recreation event, commercial filming, or still photography, as defined in §251.51 of this subpart, or for a landowner's ingress or egress across National Forest System lands that requires travel on a National Forest System road that is not

authorized for general public use under §251.110(d) of this part; or

(2) Authorization of that use is required by an order issued under §261.50 or by a regulation issued under §261.70 of this chapter.

(e) For proposed uses other than a noncommercial group use, a special use authorization is not required if, based upon review of a proposal, the authorized officer determines that the proposed use has one or more of the following characteristics:

(1) The proposed use will have such nominal effects on National Forest System lands, resources, or programs that it is not necessary to establish terms and conditions in a special use authorization to protect National Forest System lands and resources or to avoid conflict with National Forest System programs or operations;

(2) The proposed use is regulated by a State agency or another Federal agency in a manner that is adequate to protect National Forest System lands and resources and to avoid conflict with National Forest System programs or operations; or

(3) The proposed use is not situated in a congressionally designated wilderness area, and is a routine operation or maintenance activity within the scope of a statutory right-of-way for a highway pursuant to R.S. 2477 (43 U.S.C. 932, repealed Oct. 21, 1976) or for a ditch or canal pursuant to R.S. 2339 (43 U.S.C. 661, as amended), or the proposed use is a routine operation or maintenance activity within the express scope of a documented linear right-of-way.

[69 FR 41964, July 13, 2004]

**§251.51  Definitions.**

*Applicant*—any individual, partnership, corporation, association, or other business entity, and any Federal, State or governmental entity or agency which applies for a special use authorization.

*Authorized officer*—any employee of the Forest Service to whom has been delegated the authority to perform the duties described in this part.

*Chief*—the Chief of the Forest Service.

*Commercial filming*—use of motion picture, videotaping, sound recording, or

000122

Case 1:06-cr-00282-WDM   Document 18-13   Filed 11/22/06   USDC Colorado   Page 3 of 14

any other moving image or audio re-
cording equipment on National Forest
System lands that involves the adver-
tisement of a product or service, the
creation of a product for sale, or the
use of models, actors, sets, or props,
but not including activities associated
with broadcasting breaking news, as
defined in FSH 2709.11, chapter 40.

*Commercial use or activity*—any use or
activity on National Forest System
lands (a) where an entry or participa-
tion fee is charged, or (b) where the pri-
mary purpose is the sale of a good or
service, and in either case, regardless
of whether the use or activity is in-
tended to produce a profit.

*Easement*—a type of special use au-
thorization (usually granted for linear
rights-of-way) that is utilized in those
situations where a conveyance of a lim-
ited and transferable interest in Na-
tional Forest System land is necessary
or desirable to serve or facilitate au-
thorized long-term uses, and that may
be compensable according to its terms.

*Forest road or trail.* A road or trail
wholly or partly within or adjacent to
and serving the National Forest Sys-
tem that the Forest Service determines
is necessary for the protection, admin-
istration, and utilization of the Na-
tional Forest System and the use and
development of its resources.

*Group use*—an activity conducted on
National Forest System lands that in-
volves a group of 75 or more people, ei-
ther as participants or spectators.

*Guiding*—providing services or assist-
ance (such as supervision, protection,
education, training, packing, touring,
subsistence, transporting people, or in-
terpretation) for pecuniary remunera-
tion or other gain to individuals or
groups on National Forest System
lands.

*Holder*—any applicant who has re-
ceived a special use authorization.

*Lease*—a type of special use author-
ization (usually granted for uses other
than linear rights-of-way) that is used
when substantial capital investment is
required and when conveyance of a con-
ditional and transferable interest in
National Forest System lands is nec-
essary or desirable to serve or facili-
tate authorized long-term uses, and
that may be revocable and compen-
sable according to its terms.

*Linear right-of-way*—a right-of-way
for a linear facility, such as a road,
trail, pipeline, electronic transmission
line, fence, water transmission facility,
or fiber optic cable.

*Major category*—A processing or mon-
itoring category requiring more than
50 hours of agency time to process an
application for a special use authoriza-
tion (processing category 6 and, in cer-
tain situations, processing category 5)
or more than 50 hours of agency time
to monitor compliance with the terms
and conditions of an authorization
(monitoring category 6 and, in certain
situations, monitoring category 5).
Major categories usually require docu-
mentation of environmental and asso-
ciated impacts in an environmental as-
sessment and may require an environ-
mental impact statement.

*Minor category*—A processing or mon-
itoring category requiring 50 hours or
less of agency time to process an appli-
cation for a special use authorization
(processing categories 1 through 4 and,
in certain situations, processing cat-
egory 5) or 50 hours or less of agency
time to monitor compliance with the
terms and conditions of an authoriza-
tion (monitoring categories 1 through 4
and, in certain situations, monitoring
category 5). Minor categories may re-
quire documentation of environmental
and associated impacts in an environ-
mental assessment.

*Monitoring*—Actions needed to ensure
compliance with the terms and condi-
tions in a special use authorization.

*National Forest System land*—all lands,
waters, or interests therein adminis-
tered by the Forest Service.

*National Forest System road.* A forest
road other than a road which has been
authorized by a legally documented
right-of-way held by a State, county,
or other local public road authority.

*NEPA procedures*—the rules, policies,
and procedures governing agency com-
pliance with the National Environ-
mental Policy Act set forth in 50 CFR
parts 1500–1508, 7 CFR part 1b, Forest
Service Manual Chapter 1950, and For-
est Service Handbook 1909.15.

*Noncommercial use or activity*—any use
or activity that does not involve a
commercial use or activity as defined
in this section.

000123

**Forest Service, USDA** §251.51

*Outfitting*—renting on or delivering to National Forest System lands for pecuniary remuneration or other gain any saddle or pack animal, vehicle, boat, camping gear, or similar supplies or equipment.

*Permit*—a special use authorization which provides permission, without conveying an interest in land, to occupy and use National Forest System land or facilities for specified purposes, and which is both revocable and terminable.

*Recreation event*—a recreational activity conducted on National Forest System lands for which an entry or participation fee is charged, such as animal, vehicle, or boat races; dog trials; fishing contests; rodeos; adventure games; and fairs.

*Recreation Residence Lot*—a parcel of National Forest System land on which a holder is authorized to build, use, occupy, and maintain a recreation residence and related improvements. A recreation residence lot is considered to be in its natural, native state at the time when the Forest Service first permitted its use for a recreation residence. A recreation residence lot is not necessarily confined to the platted boundaries shown on a tract map or permit area map. A recreation residence lot includes the physical area of all National Forest System land being used or occupied by a recreation residence permit holder, including, but not limited to, land being occupied by ancillary facilities and uses owned, operated, or maintained by the holder, such as septic systems, water systems, boat houses and docks, major vegetative modifications, and so forth.

*Revocation*—the cessation of a special use authorization by action of an authorized officer before the end of the specified period of occupancy or use for reasons set forth in §251.60(a)(1)(i), (a)(2)(i), (g), and (h) of this subpart.

*Right-of-way*—land authorized to be used or occupied for the construction, operation, maintenance and termination of a project or facility passing over, upon, under or through such land.

*Secretary*—the Secretary of Agriculture.

*Ski area*—a site and attendant facilities expressly developed to accommodate alpine or nordic skiing and from which the preponderance of revenue is generated by the sale of lift tickets and fees for ski rentals, for skiing instruction and trail passes for the use of permittee-maintained ski trails. A ski area may also include ancillary facilities directly related to the operation and support of skiing activities.

*Sound business management principles*—a phrase that refers to accepted industry practices or methods of establishing fees and charges that are used or applied by the Forest Service to help establish the appropriate charge for a special use. Examples of such practices and methods include, but are not limited to, appraisals, fee schedules, competitive bidding, negotiation of fees, and application of other economic factors, such as cost efficiency, supply and demand, and administrative costs.

*Special use authorization*—a permit, term permit, lease, or easement which allows occupancy, use, rights, or privileges of National Forest System land.

*Still photography*—use of still photographic equipment on National Forest System lands that takes place at a location where members of the public generally are not allowed or where additional administrative costs are likely, or uses models, sets, or props that are not a part of the site's natural or cultural resources or administrative facilities.

*Suspension*—a temporary revocation of a special use authorization.

*Termination*—the cessation of a special use authorization by operation of law or by operation of a fixed or agreed-upon condition, event, or time as specified in an authorization without the necessity for any decision or action by the authorized officer; for example, expiration of the authorized term or transfer of the authorized improvement to another party.

*Term permit*—a special use authorization to occupy and use National Forest System land, other than rights-of-way

303

§ 251.52

under §251.53(l) of this part, for a specified period which is both revocable and compensable according to its terms.

[45 FR 38327, June 6, 1980, as amended at 49 FR 25449, June 21, 1984; 53 FR 16550, May 10, 1988; 54 FR 22593, May 25, 1989; 60 FR 45293, Aug. 30, 1995; 60 FR 54409, Oct. 23, 1995; 63 FR 65964, Nov. 30, 1998; 69 FR 41965, July 13, 2004; 70 FR 68290, Nov. 9, 2005; 71 FR 8913, Feb. 21, 2006; 71 FR 16621, Apr. 3, 2006]

§ 251.52   Delegation of authority.

Special use authorizations shall be issued, granted, amended, renewed, suspended, terminated, or revoked by the Chief, or through delegation, by the Regional Forester, Forest Supervisor, District Ranger or other forest officer, and shall be in such form and contain such terms, stipulations, conditions, and agreements as may be required by the regulations of the Secretary and the instructions of the Chief (7 CFR 2.60; 36 CFR part 200, subpart B).

§ 251.53   Authorities.

Subject to any limitations contained in applicable statutes, the Chief of the Forest Service, or other Agency official to whom such authority is delegated, may issue special use authorizations for National Forest System land under the authorities cited and for the types of use specified in this section as follows:

(a) Permits governing occupancy and use, including group events and distribution of noncommercial printed materials, under the act of June 4, 1897, 30 Stat. 35 (16 U.S.C. 551);

(b) Leases under the Act of February 28, 1899, 30 Stat. 908 (16 U.S.C. 495) for public sanitariums or hotels near or adjacent to mineral springs;

(c) Permits under the Act of June 8, 1906, 34 Stat. 225 (16 U.S.C. 431, et seq.), for the examination of ruins, the excavation of archaeological sites, and the gathering of objects of antiquity in conformity with the rules and regulations prescribed by the Secretaries of the Interior, Agriculture, and War, December 28, 1906 (43 CFR part 3);

(d) Term permits under the Act of March 4, 1915, 38 Stat. 1101, as amended, 70 Stat. 708 (16 U.S.C. 497) for periods not over 30 years and (1) for not over 80 acres for (i) hotels, resorts, and other structures and facilities for recreation,

public convenience, or safety; (ii) industrial or commercial purposes, and (iii) education or public activities; and (2) for not over 5 acres for summer homes and stores;

(e) Easements for rights-of-way for pipeline purposes for the transportation of oil and gas and products thereof where no Federal land other than National Forest System land is required, and permits for the temporary use of additional National Forest System land necessary for construction, operation, maintenance or termination of a pipeline or to protect the natural environment or the public safety under section 28 of the Mineral Leasing Act of 1920, 41 Stat. 449, as amended, (30 U.S.C. 185);

(f) Permits, term permits, and easements in the National Grasslands and other lands acquired or administered under title III, Act of July 22, 1937, 50 Stat. 525, as amended, (7 U.S.C. 1011(d));

(g) Permits under section 7 of the Act of April 24, 1950, 64 Stat. 84 (16 U.S.C. 580d) for periods not over 30 years for the use of structures or improvements under the administrative control of the Forest Service and land used in connection therewith;

(h) Permits, term permits, leases, or easements as authorized by the Act of September 3, 1954, 68 Stat. 1146 (43 U.S.C. 931c, 931d), to States, counties, cities, towns, townships, municipal corporations, or other public agencies for periods not over 30 years, at prices representing the fair market value, fixed by the Chief, through appraisal for the purpose of constructing and maintaining on such lands public buildings or other public works;

(i) Permits under the Wilderness Act of September 3, 1964, 78 Stat. 890 (16 U.S.C. 1131–1136) for temporary structures and commercial services and for access to valid mining claims or other valid occupancies and to surrounded State or private land within designated wilderness (see part 293 of this chapter);

(j) Temporary or permanent easements under the Act of October 13, 1964, 78 Stat. 1089 (16 U.S.C. 532–538) for road rights-of-way over lands and interests in land administered by the Forest Service (see §212.10 of this chapter);

304

**Forest Service, USDA** §251.54

(k) Special recreation permits issued under section 803(h) of the Federal Lands Recreation Enhancement Act (16 U.S.C. 6802(h)), for specialized recreation uses of National Forest System lands, such as group activities, recreation events, and motorized recreational vehicle use.

(l) Permits, leases and easements under the Federal Land Policy and Management Act of 1976, 90 Stat. 2776 (43 U.S.C. 1761–1771) for rights-of-way for:

(1) Reservoirs, canals, ditches, flumes, laterals, pipes, pipelines, tunnels, and other facilities and systems for the impoundment, storage, transportation, or distribution of water;

(2) Pipelines and other systems for the transportation or distribution of liquids and gases, other than water and other than oil, natural gas, synthetic liquid or gaseous fuels, or any refined product produced therefrom, and for storage and terminal facilities in connection therewith;

(3) Pipelines, slurry and emulsion systems, and conveyor belts for transportation and distribution of solid materials, and facilities for the storage of such materials in connection therewith;

(4) Systems and related facilities for generation, transmission, and distribution of electric energy, except that the applicant, in addition to obtaining a Forest Service special use authorization, shall also comply with all applicable requirements of the Federal Energy Regulatory Commission under the Federal Power Act of 1935, as amended, 49 Stat. 838 (16 U.S.C. 791a, et seq.);

(5) Systems for transmission or reception of radio, television, telephone, telegraph, and other electronic signals and other means of communication;

(6) Roads, trails, highways, railroads, canals, tunnels, tramways, airways, livestock driveways, or other means of transportation except where such facilities are constructed and maintained in connection with commercial recreation facilities;

(7) Such other necessary transportation or other systems or facilities which are in the public interest and which require rights-of-way over, upon, under, or through National Forest System lands; and

(8) Any Federal department or agency for pipeline purposes for the transportation of oil, natural gas, synthetic liquid or gaseous fuels, or any product produced therefrom;

(m) Permits under the Archaeological Resources Protection Act of 1979, 93 Stat. 721 (16 U.S.C. 470aa).

(n) Operation of nordic and alpine ski areas and facilities for up to 40 years and encompassing such acreage as the Forest Officer determines sufficient and appropriate as authorized by the National Forest Ski Area Permit Act of 1986 (16 U.S.C. 497b).

[45 FR 38327, June 6, 1980; 45 FR 43167, June 26, 1980, as amended at 49 FR 25449, June 21, 1984; 53 FR 16550, May 10, 1988; 54 FR 22594, May 25, 1989; 70 FR 70498, Nov. 22, 2005]

**§251.54 Proposal and application requirements and procedures.**

(a) *Early notice.* When an individual or entity proposes to occupy and use National Forest System lands, the proponent is required to contact the Forest Service office(s) responsible for the management of the affected land as early as possible in advance of the proposed use.

(b) *Filing proposals.* Proposals for special uses must be filed in writing with or presented orally to the District Ranger or Forest Supervisor having jurisdiction over the affected land (§200.2 of this chapter), except as follows:

(1) Proposals for projects on lands under the jurisdiction of two or more administrative units of the Forest Service may be filed at the most convenient Forest Service office having jurisdiction over part of the project, and the proponent will be notified where to direct subsequent communications;

(2) Proposals for cost-share and other road easements to be issued under §251.53(j) must be filed in accordance with regulations in §212.10(c) and (d) of this chapter; and

(3) Proposals for oil and gas pipeline rights-of-way crossing Federal lands under the jurisdiction of two or more Federal agencies must be filed with the State Office, Bureau of Land Management, pursuant to regulations at 43 CFR part 2882.

(c) *Rights of proponents.* A proposal to obtain a special use authorization does not grant any right or privilege to use

305

000126

National Forest System lands. Rights or privileges to occupy and use National Forest System lands under this subpart are conveyed only through issuance of a special use authorization.

(d) *Proposal content*—(1) *Proponent identification*. Any proponent for a special use authorization must provide the proponent's name and mailing address, and, if the proponent is not an individual, the name and address of the proponent's agent who is authorized to receive notice of actions pertaining to the proposal.

(2) *Required information*—(i) *Noncommercial group uses*. Paragraphs (d)(3) through (d)(5) of this section do not apply to proposals for noncommercial group uses. A proponent for noncommercial group uses shall provide the following:

(A) A description of the proposed activity;

(B) The location and a description of the National Forest System lands and facilities the proponent would like to use;

(C) The estimated number of participants and spectators;

(D) The starting and ending time and date of the proposed activity; and

(E) The name of the person or persons 21 years of age or older who will sign a special use authorization on behalf of the proponent.

(ii) *All other special uses*. At a minimum, proposals for special uses other than noncommercial group uses must include the information contained in paragraphs (d)(3) through (d)(5) of this section. In addition, if requested by an authorized officer, a proponent in one of the following categories must furnish the information specified for that category:

(A) If the proponent is a State or local government agency: a copy of the authorization under which the proposal is made;

(B) If the proponent is a public corporation: the statute or other authority under which it was organized;

(C) If the proponent is a Federal Government agency: the title of the agency official delegated the authority to file the proposal;

(D) If the proponent is a private corporation:

(*1*) Evidence of incorporation and its current good standing;

(*2*) If reasonably obtainable by the proponent, the name and address of each shareholder owning three percent or more of the shares, together with the number and percentage of any class of voting shares of the entity which such shareholder is authorized to vote;

(*3*) The name and address of each affiliate of the entity;

(*4*) In the case of an affiliate which is controlled by the entity, the number of shares and the percentage of any class of voting stock of the affiliate that the entity owns either directly or indirectly; or

(*5*) In the case of an affiliate which controls that entity, the number of shares and the percentage of any class of voting stock of that entity owned, either directly or indirectly by the affiliate; or

(E) If the proponent is a partnership, association, or other unincorporated entity: a certified copy of the partnership agreement or other similar document, if any, creating the entity, or a certificate of good standing under the laws of the State.

(3) *Technical and financial capability*. The proponent is required to provide sufficient evidence to satisfy the authorized officer that the proponent has, or prior to commencement of construction will have, the technical and financial capability to construct, operate, maintain, and terminate the project for which an authorization is requested, and the proponent is otherwise acceptable.

(4) *Project description*. Except for requests for planning permits for a major development, a proponent must provide a project description, including maps and appropriate resource information, in sufficient detail to enable the authorized officer to determine the feasibility of a proposed project or activity, any benefits to be provided to the public, the safety of the proposal, the lands to be occupied or used, the terms and conditions to be included, and the proposal's compliance with applicable laws, regulations, and orders.

(5) *Additional information*. The authorized officer may require any other information and data necessary to determine feasibility of a project or activity

proposed; compliance with applicable laws, regulations, and orders; compliance with requirements for associated clearances, certificates, permits, or licenses; and suitable terms and conditions to be included in the authorization. The authorized officer shall make requests for any additional information in writing.

(e) *Pre-application actions*—(1) *Initial screening.* Upon receipt of a request for any proposed use other than for noncommercial group use, the authorized officer shall screen the proposal to ensure that the use meets the following minimum requirements applicable to all special uses:

(i) The proposed use is consistent with the laws, regulations, orders, and policies establishing or governing National Forest System lands, with other applicable Federal law, and with applicable State and local health and sanitation laws.

(ii) The proposed use is consistent or can be made consistent with standards and guidelines in the applicable forest land and resource management plan prepared under the National Forest Management Act and 36 CFR part 219.

(iii) The proposed use will not pose a serious or substantial risk to public health or safety.

(iv) The proposed use will not create an exclusive or perpetual right of use or occupancy.

(v) The proposed use will not unreasonably conflict or interfere with administrative use by the Forest Service, other scheduled or authorized existing uses of the National Forest System, or use of adjacent non-National Forest System lands.

(vi) The proponent does not have any delinquent debt owed to the Forest Service under terms and conditions of a prior or existing authorization, unless such debt results from a decision on an administrative appeal or from a fee review and the proponent is current with the payment schedule.

(vii) The proposed use does not involve gambling or providing of sexually oriented commercial services, even if permitted under State law.

(viii) The proposed use does not involve military or paramilitary training or exercises by private organizations or individuals, unless such training or exercises are federally funded.

(ix) The proposed use does not involve disposal of solid waste or disposal of radioactive or other hazardous substances.

(2) *Results of initial screening.* Any proposed use other than a noncommercial group use that does not meet all of the minimum requirements of paragraphs (e)(1)(i)-(ix) of this section shall not receive further evaluation and processing. In such event, the authorized officer shall advise the proponent that the use does not meet the minimum requirements. If the proposal was submitted orally, the authorized officer may respond orally. If the proposal was made in writing, the authorized officer shall notify the proponent in writing that the proposed use does not meet the minimum requirements and shall simultaneously return the request.

(3) *Guidance and information to proponents.* For proposals for noncommercial group use as well as for those proposals that meet the minimum requirements of paragraphs (e)(1)(i)-(ix), the authorized officer, to the extent practicable, shall provide the proponent guidance and information on the following:

(i) Possible land use conflicts as identified by review of forest land and resource management plans, landownership records, and other readily available sources;

(ii) Proposal and application procedures and probable time requirements;

(iii) Proponent qualifications;

(iv) Applicable fees, charges, bonding, and/or security requirements;

(v) Necessary associated clearances, permits, and licenses;

(vi) Environmental and management considerations;

(vii) Special conditions; and

(viii) identification of on-the-ground investigations which will require temporary use permits.

(4) *Confidentiality.* If requested by the proponent, the authorized officer, or other Forest Service official, to the extent reasonable and authorized by law, shall hold confidential any project and program information revealed during pre-application contacts.

(5) *Second-level screening of proposed uses.* A proposal which passes the initial screening set forth in paragraph (e)(1) and for which the proponent has submitted information as required in paragraph (d)(2)(ii) of this section, proceeds to second-level screening and consideration. In order to complete this screening and consideration, the authorized officer may request such additional information as necessary to obtain a full description of the proposed use and its effects. An authorized officer shall reject any proposal, including a proposal for commercial group uses, if, upon further consideration, the officer determines that:

(i) The proposed use would be inconsistent or incompatible with the purposes for which the lands are managed, or with other uses; or

(ii) The proposed use would not be in the public interest; or

(iii) The proponent is not qualified; or

(iv) The proponent does not or cannot demonstrate technical or economic feasibility of the proposed use or the financial or technical capability to undertake the use and to fully comply with the terms and conditions of the authorization; or

(v) There is no person or entity authorized to sign a special use authorization and/or there is no person or entity willing to accept responsibility for adherence to the terms and conditions of the authorization.

(6) *NEPA compliance for second-level screening process.* A request for a special use authorization that does not meet the criteria established in paragraphs (e)(5)(i) through (e)(5)(v) of this section does not constitute an agency proposal as defined in 40 CFR 1508.23 and, therefore, does not require environmental analysis and documentation.

(f) *Special requirements for certain proposals*—(1) *Oil and gas pipeline rights-of-way.* These proposals must include the citizenship of the proponent(s) and disclose the identity of its participants as follows:

(i) Citizens of another country, the laws, customs, or regulations of which deny similar or like privileges to citizens or corporations of the United States, shall not own an appreciable in-

terest in any oil and gas pipeline right-of-way or associated permit; and

(ii) The authorized officer shall notify the House Committee on Resources and the Senate Committee on Energy and Natural Resources promptly upon receipt of a proposal for a right-of-way for a pipeline twenty-four (24) inches or more in diameter, and no right-of-way for such a pipeline shall be granted until sixty (60) days (not counting days on which the House of Representatives or the Senate has adjourned for more than three (3) days) after a notice of intention to grant the right-of-way, together with the authorized officer's detailed findings as to terms and conditions the officer proposes to impose, has been submitted to such committees, unless each committee by resolution waives the waiting period.

(2) *Electric power transmission lines 66 KV or over.* Any proposal for authority to construct and maintain a facility for the generation of electric power and energy or for the transmission or distribution of electric power and energy of 66 kilovolts or higher under this section must be referred to the Secretary of Energy for consultation.

(3) *Major development.* Proponents of a major development may submit a request for a planning permit of up to 10 years in duration. Requests for a planning permit must include the information contained in paragraphs (d)(1) through (d)(3) of this section. Upon completion of a master development plan developed under a planning permit, proponents may then submit a request for a long-term authorization to construct and operate the development. At a minimum, a request for a long-term permit for a major development must include the information contained in paragraphs (d)(1) and (d)(2)(ii) through (d)(5) of this section. Issuance of a planning permit does not prejudice approval or denial of a subsequent request for a special use permit for the development.

(g) *Application processing and response*—(1) *Acceptance of applications.* Except for proposals for noncommercial group uses, if a request does not meet the criteria of both screening processes or is subsequently denied, the

000129

proponent must be notified with a written explanation of the rejection or denial and any written proposal returned to the proponent. If a request for a proposed use meets the criteria of both the initial and second-level screening processes as described in paragraph (e) of this section, the authorized officer shall notify the proponent that the agency is prepared to accept a written formal application for a special use authorization and shall, as appropriate or necessary, provide the proponent guidance and information of the type described in paragraphs (e)(3)(i) through (e)(3)(viii) of this section.

(2) *Processing applications.* (i) Upon acceptance of an application for a special use authorization other than a planning permit, the authorized officer shall evaluate the proposed use for the requested site, including effects on the environment. The authorized officer may request such additional information as necessary to obtain a full description of the proposed use and its effects.

(ii) Federal, State, and local government agencies and the public shall receive adequate notice and an opportunity to comment upon a special use proposal accepted as a formal application in accordance with Forest Service NEPA procedures.

(iii) The authorized officer shall give due deference to the findings of another agency such as a Public Utility Commission, the Federal Regulatory Energy Commission, or the Interstate Commerce Commission in lieu of another detailed finding. If this information is already on file with the Forest Service, it need not be refiled, if reference is made to the previous filing date, place, and case number.

(iv) Applications for noncommercial group uses must be received at least 72 hours in advance of the proposed activity. Applications for noncommercial group uses shall be processed in order of receipt, and the use of a particular area shall be allocated in order of receipt of fully executed applications, subject to any relevant limitations set forth in this section.

(v) For applications for planning permits, including those issued for a major development as described in paragraph (f)(3) of this section, the au-

thorized officer shall assess only the applicant's financial and technical qualifications and determine compliance with other applicable laws, regulations, and orders. Planning permits may be categorically excluded from documentation in an environmental assessment or environmental impact statement pursuant to Forest Service Handbook 1909.15 (36 CFR 200.4).

(3) *Response to applications for noncommercial group uses.* (i) All applications for noncommercial group uses shall be deemed granted and an authorization shall be issued for those uses pursuant to the determination as set forth below, unless applications are denied within 48 hours of receipt. Where an application for a noncommercial group use has been granted or is deemed to have been granted and an authorization has been issued under this paragraph, an authorized officer may revoke that authorization only as provided under §251.60(a)(1)(i).

(ii) An authorized officer shall grant an application for a special use authorization for a noncommercial group use upon a determination that:

(A) Authorization of the proposed activity is not prohibited by the rules at 36 CFR part 261, subpart B, or by Federal, State, or local law unrelated to the content of expressive activity;

(B) Authorization of the proposed activity is consistent or can be made consistent with the standards and guidelines in the applicable forest land and resource management plan required under the National Forest Management Act and 36 CFR part 219;

(C) The proposed activity does not materially impact the characteristics or functions of the environmentally sensitive resources or lands identified in Forest Service Handbook 1909.15, chapter 30;

(D) The proposed activity will not delay, halt, or prevent administrative use of an area by the Forest Service or other scheduled or existing uses or activities on National Forest System lands, including but not limited to uses and activities authorized under parts 222, 223, 228, and 251 of this chapter;

(E) The proposed activity does not violate State and local public health laws and regulations as applied to the proposed site. Issues addressed by

000130

State and local public health laws and regulations as applied to the proposed site include but are not limited to:

(*1*) The sufficiency of sanitation facilities;

(*2*) The sufficiency of waste-disposal facilities;

(*3*) The availability of sufficient potable drinking water;

(*4*) The risk of disease from the physical characteristics of the proposed site or natural conditions associated with the proposed site; and

(*5*) The risk of contamination of the water supply;

(F) The proposed activity will not pose a substantial danger to public safety. Considerations of public safety must not include concerns about possible reaction to the users' identity or beliefs from non-members of the group that is seeking an authorization and shall be limited to the following:

(*1*) The potential for physical injury to other forest users from the proposed activity;

(*2*) The potential for physical injury to users from the physical characteristics of the proposed site or natural conditions associated with the proposed site;

(*3*) The potential for physical injury to users from scheduled or existing uses or activities on National Forest System lands; and

(*4*) The adequacy of ingress and egress in case of an emergency;

(G) The proposed activity does not involve military or paramilitary training or exercises by private organizations or individuals, unless such training or exercises are federally funded; and

(H) A person or persons 21 years of age or older have been designated to sign and do sign a special use authorization on behalf of the applicant.

(iii) If an authorized officer denies an application because it does not meet the criteria in paragraphs (g)(3)(ii)(A) through (g)(3)(ii)(H) of this section, the authorized officer shall notify the applicant in writing of the reasons for the denial. If an alternative time, place, or manner will allow the applicant to meet the eight evaluation criteria, an authorized officer shall offer that alternative. If an application is denied solely under paragraph (g)(3)(ii)(C) of

this section and all alternatives suggested are unacceptable to the applicant, the authorized officer shall offer to have completed the requisite environmental and other analyses for the requested site. A decision to grant or deny the application for which an environmental assessment or an environmental impact statement is prepared is subject to the notice and appeal procedures at 36 CFR part 215 and shall be made within 48 hours after the decision becomes final under that appeal process. A denial of an application under paragraphs (g)(3)(ii)(A) through (g)(3)(ii)(H) of this section constitutes final agency action and is immediately subject to judicial review.

(4) *Response to all other applications.* Based on evaluation of the information provided by the applicant and other relevant information such as environmental findings, the authorized officer shall decide whether to approve the proposed use, approve the proposed use with modifications, or deny the proposed use. A group of applications for similar uses having minor environmental impacts may be evaluated with one analysis and approved in one decision.

(5) *Authorization of a special use.* Upon a decision to approve a special use or a group of similar special uses, the authorized officer may issue one or more special use authorizations as defined in § 251.51 of this subpart.

[63 FR 65964, Nov. 30, 1998]

§ 251.55   Nature of interest.

(a) A holder is authorized only to occupy such land and structures and conduct such activities as is specified in the special use authorization. The holder may sublet the use and occupancy of the premises and improvements authorized only with the prior written approval of the authorized officer, but the holder shall continue to be responsible for compliance with all conditions of the special use authorization.

(b) All rights not expressly granted are retained by the United States, including but not limited to (1) continuing rights of access to all National Forest System land (including the subsurface and air space); (2) a continuing right of physical entry to any part of

000131

**Forest Service, USDA**                                    **§ 251.56**

the authorized facilities for inspection, monitoring, or for any other purposes or reason consistent with any right or obligation of the United States under any law or regulation; and (3) the right to require common use of the land or to authorize the use by others in any way not inconsistent with a holder's existing rights and privileges after consultation with all parties and agencies involved. When costs can be feasibly allocated and have not been amortized, a new holder may be required to compensate existing holders for an equitable proportion of the original costs or other expense associated with the common use.

(c) Special use authorizations are subject to all outstanding valid rights.

(d) Each special use authorization will specify the lands to be used or occupied which shall be limited to that which the authorized officer determines: (1) Will be occupied by the facilities authorized; (2) to be necessary for the construction, operation, maintenance, and full utilization of the authorized facilities or the conduct of authorized activities; and, (3) to be necessary to protect the public health and safety and the environment.

(e) The holder will secure permission under applicable law, and pay in advance, the value as determined by the authorized officer for any mineral and vegetative materials (including timber) to be cut, removed, used, or destroyed by the holder from the authorized use area or other National Forest System land. The authorized officer may, in lieu of requiring an advance payment, require the holder to stockpile or stack the material at designated locations for later disposal by the United States.

**§ 251.56   Terms and conditions.**

(a) *General.* (1) Each special use authorization must contain:

(i) Terms and conditions which will:

(A) Carry out the purposes of applicable statutes and rules and regulations issued thereunder;

(B) Minimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protect the environment;

(C) Require compliance with applicable air and water quality standards es-

tablished by or pursuant to applicable Federal or State law; and

(D) Require compliance with State standards for public health and safety, environmental protection, and siting, construction, operation, and maintenance if those standards are more stringent than applicable Federal standards.

(ii) Such terms and conditions as the authorized officer deems necessary to:

(A) Protect Federal property and economic interests;

(B) Manage efficiently the lands subject to the use and adjacent thereto;

(C) Protect other lawful users of the lands adjacent to or occupied by such use;

(D) Protect lives and property;

(E) Protect the interests of individuals living in the general area of the use who rely on the fish, wildlife, and other biotic resources of the area for subsistence purposes;

(F) Require siting to cause the least damage to the environment, taking into consideration feasibility and other relevant factors; and

(G) Otherwise protect the public interest.

NOTE TO PARAGRAPH (a)(1)(ii)(G): The Department is making explicit its preexisting understanding of § 251.56(a)(1)(ii)(G) of this subpart in the context of authorizing noncommercial group uses of National Forest System lands. Section 251.56(a)(1)(ii)(G) provides that each special use authorization shall contain such terms and conditions as the authorized officer deems necessary to otherwise protect the public interest. In the context of noncommercial group uses, the Forest Service interprets the term "public interest" found in § 251.56(a)(1)(ii)(G) to refer to the three public interests identified by the Forest Service on August 30, 1995. These public interests include the protection of resources and improvements on National Forest System lands, the allocation of space among potential or existing uses and activities, and public health and safety concerns. Under this construction, § 251.56(a)(1)(ii)(G) allows the Forest Service to impose terms and conditions that are not specifically addressed in § 251.56(a)(1)(ii)(A)–(F) but only those that further these public interests. The Forest Service shall implement and enforce § 251.56(a)(1)(ii)(G) in accordance with this interpretation.

(2) Authorizations for use of National Forest System lands may be conditioned to require State, county, or

311

000132

other Federal agency licenses, permits, certificates, or other approval documents, such as a Federal Communication Commission license, a Federal Energy Regulatory Commission license, a State water right, or a county building permit.

(b) *Duration and renewability*—(1) *Requirements.* If appropriate, each special use authorization will specify its duration and renewability. The duration shall be no longer than the authorized officer determines to be necessary to accomplish the purpose of the authorization and to be reasonable in light of all circumstances concerning the use, including

(i) Resource management direction contained in land management and other plans;

(ii) Public benefits provided;

(iii) Cost and life expectancy of the authorized facilities;

(iv) Financial arrangements for the project; and

(v) The life expectancy of associated facilities, licenses, etc. Except for special use authorizations issued under the National Forest Ski Area Permit Act of 1986, authorizations exceeding 30 years shall provide for revision of terms and conditions at specified intervals to reflect changing times and conditions.

(2) *Ski area permits.* (i) For authorizations issued under the National Forest Ski Area Permit Act of 1986, the authorized officer normally shall issue a ski area authorization for 40 years, if, upon consideration of information submitted by the applicant, the authorized officer finds that the ski area development meets the following standards:

(A) In the case of an existing permit holder, existing on-site investment is of sufficient magnitude to justify authorization for 40 years;

(B) In the case of an existing permit holder, existing investment of capital is in ski-related facilities;

(C) Planned investment capital is directly related to development of ski area facilities and is not for financing regular, ongoing operation and maintenance costs;

(D) Ski facilities requiring long-term investment are, or will be, located predominately on land authorized under a permit;

(E) The number and magnitude of planned facilities, as detailed in a Master Development Plan, clearly require long-term financing and/or operation;

(F) The United States is not the owner of the principal facilities within the authorized ski area.

(ii) A term of less than 40 years shall be authorized for a ski area when the applicant requests a shorter term or when, in the authorized officer's discretion:

(A) Analysis of the information submitted by the applicant indicates that a shorter term is sufficient for financing of the ski area;

(B) The ski area development, whether existing or proposed, does not meet the standards of paragraph (2)(i)(A) through (F) of this section; or

(C) A 40-year authorization would be inconsistent with the approved forest land and resource management plan governing the area (36 CFR part 219).

(c) *Preconstruction approvals.* Forest Service approval of location, design and plans (or standards, if appropriate) of all developments within the authorized area will be required prior to construction.

(d) *Liability.* Holders shall pay the United States for all injury, loss, or damage, including fire suppression costs, in accordance with existing Federal and State laws.

(1) Holders shall also indemnify the United States for any and all injury, loss, or damage, including fire suppression costs, the United States may suffer as a result of claims, demands, losses, or judgments caused by the holder's use or occupancy.

(2) Holders of special use authorizations for high risk use and occupancy, such as, but not limited to, powerlines and oil and gas pipelines, shall be held liable for all injury, loss, or damage, including fire suppression costs, caused by the holder's use or occupancy, without regard to the holder's negligence, provided that maximum liability shall be specified in the special use authorization as determined by a risk assessment, prepared in accordance with established agency procedures, but shall not exceed $1,000,000 for any one occurrence. Liability for injury, loss, or damage, including fire suppression

312

**Forest Service, USDA** §251.57

costs, in excess of the specified maximum shall be determined by the laws governing ordinary negligence of the jurisdiction in which the damage or injury occurred.

(e) *Bonding.* An authorized officer may require the holder of a special use authorization for other than a noncommercial group use to furnish a bond or other security to secure all or any of the obligations imposed by the terms of the authorization or by any applicable law, regulation or order.

(f) *Special terms and conditions*—(1) *Public service enterprises.* Special use permits authorizing the operation of public service enterprises shall require that the permittee charge reasonable rates and furnish such services as may be necessary in the public interest, except where such rates and services are regulated by Federal, State or municipal agencies having jurisdiction.

(2) *Common carriers.* Oil and gas pipelines and related facilities authorized under section 28 of the Mineral Leasing Act of 1920, 41 Stat. 449, as amended (30 U.S.C. 185), shall be constructed, operated and maintained as common carriers. The owners or operators of pipelines shall accept, convey, transport, or purchase without discrimination all oil or gas delivered to the pipeline without regard to whether such oil or gas was produced on Federal or nonfederal lands. In the case of oil or gas produced from Federal lands or from the resources on the Federal lands in the vicinity of the pipeline, the Secretary may, after a full hearing with due notice thereof to interested parties and a proper finding of facts, determine the proportionate amounts to be accepted, conveyed, transported, or purchased. The common carrier provisions of this section shall not apply to any natural gas pipeline operated (i) by any person subject to regulation under the Natural Gas Act, 52 Stat. 821, as amended, (15 U.S.C. 717) or (ii) by any public utility subject to regulation by a State or municipal regulatory agency having jurisdiction to regulate the rates and charges for the sale of natural gas to consumers within the State or municipality. Where natural gas not subject to State regulatory or conservation laws governing its purchase by pipeline companies is offered for sale, each pipe-

line company shall purchase, without discrimination, any such natural gas produced in the vicinity of the pipeline.

(g) *Conversion of Ski Area Authorizations.* (1) The Forest Service shall request that all existing permit holders convert existing authorizations for ski areas to a new authorization issued pursuant to the National Forest Ski Area Permit Act.

(2) Any current holder of a ski area permit who wishes to convert an existing permit to one issued pursuant to the National Forest Ski Area Permit Act must submit a written request for the new authorization to the authorized officer.

(3) With the consent of the holder, the authorized officer shall convert the authorization if:

(i) The holder is in compliance with the existing authorization;

(ii) All fees currently due under the existing authorization are paid in full; and

(iii) Any proposed modifications of terms and conditions of the existing authorization included in a request for conversion meet the standards of paragraphs (2)(i) (A) through (F) of this section and the relevant requirements of this subpart.

(4) A holder retains the right to decline a new authorization offered pursuant to this paragraph and to continue to operate under the terms of the existing permit. However, pursuant to the rules at §251.61 of this subpart, major modifications of existing permits shall require conversion to a permit issued under the authority of the National Forest Ski Area Permit Act, unless the holder provides compelling justification for retaining the existing permit.

[45 FR 38327, June 6, 1980, as amended at 49 FR 46895, Nov. 29, 1984; 54 FR 22594, May 25, 1989; 60 FR 45294, Aug. 30, 1995; 63 FR 65967, Nov. 30, 1998; 64 FR 48960, Sept. 9, 1999]

## §251.57  Rental fees.

(a) Except as otherwise provided in this part or when specifically authorized by the Secretary of Agriculture, special use authorizations shall require the payment in advance of an annual rental fee as determined by the authorized officer.

313

000134