IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Criminal Case 06-cr-00282-WDM

UNITED STATES OF AMERICA,

    Plaintiff/Appellee,

v.

SCOTT SOWKA,

    Defendant/Appellant.

---

## ORDER ON APPEAL OF CONVICTION BY MAGISTRATE JUDGE

Miller, J.

This matter is before me on Defendant Scott Sowka's Notice of Appeal (Docket No. 6), challenging Magistrate Judge David L. West's finding, after a bench trial, that Defendant was guilty of the charge of use or occupancy of National Forest System land without a permit in violation of 36 C.F.R. 261.10(k), a misdemeanor. The trial and sentencing were held on July 7, 2006.[1] Defendant filed a timely notice of appeal pursuant to Rule 58 of the Federal Rules of Criminal Procedure. I have reviewed the record of the trial and the arguments and authorities contained in the parties' appellate briefs and conclude that oral argument is not required. For the reasons set forth below, the conviction and sentence will be affirmed.

---

[1] Defendant was sentenced to pay a fine of $100, a $25 Central Violations Bureau processing fee, and a $10 victim compensation fee. Defendant was also sentenced to unsupervised probation for one year, during which time he was prohibited from returning to any National Forest, except that Defendant was permitted to be in Routt County National Forest until September 1, 2006 to participate in the clean-up of the site.

Background

Defendant is a member of the Rainbow Family of Living Light ("Rainbow Family"), which has been described in other court cases as "an unincorporated, loosely-structured group of individuals that regularly gathers in undeveloped sites in National Forests to 'pray for peace, discuss environmental and other contemporary political and social issues, and [to] exchange, develop[,] express and demonstrate their ideas and views.'" *Black v. Arthur*, 18 F. Supp. 2d 1127, 1130 (D. Or. 1998). Annual gatherings are typically held around July 4 and draw thousands of participants. *Id.* Evidence presented at trial established the following additional facts about the Rainbow Family and its annual gatherings: The gatherings are held in a different location every year, usually on public lands pursuant to the group's traditions. A "Vision Council" at the end of a gathering decides in what state the next year's gathering will be held, although the exact location is not determined until approximately one month prior to the event. The decision regarding the exact site is communicated to members through various websites.

At previous gatherings, informal cooperation plans were arrived at between the Rainbow Family and the United States Forest Service regarding site management and clean-up. *See Black v. Arthur*, 201 F.3d 1120, 1122 (9th Cir. 2000) (communications between Rainbow Family and Forest Service prior to gatherings yielded operating plans "detailing things like the location of food preparation areas, the location of latrines, the timing of gathering activities, and the nature of clean-up and restoration activities."). However, after the regulations implementing procedures for the operating plans were held unconstitutional in 1988, the regulations were amended. *Id.* Under the current

2

regulations, in force at the time of Defendant's arrest, a special use permit is required for groups of more than 75.  36 C.F.R. §§ 251.50(c)(3), 251.51.

The 2004 gathering had approximately 20,000 participants and the 2005 gathering had approximately 10,000 participants.  On July 1, 2006, there were an estimated 10,000 people present at the gathering held in the Routt National Forest in Colorado, where Defendant was arrested, with approximately 15,000 participants by July 4, 2006.  Although special use permits were obtained by the group in 2003, 2004 and 2005, no permit was issued for the 2006 gathering.[2]

The gathering has a certain amount of organization, including kitchens, day care, some medical aid, and water purification procedures.  A manual compiled from previous gatherings (called the "Mini Manual") is posted on a website and provides participants with guidance about the group's philosophy, requirements for the gathering site, the group's commitment to preserving the environment, water and sanitation advice including latrine placement and treatment, trash and clean-up, fire precautions, self-governance, internal security, and other available facilities and resources.  One of the main events at the gathering is a prayer circle on July 4 to meditate for peace and healing of the earth.

The facts concerning Defendant's conviction are generally undisputed.  A special incident team brought in to assist the home Forest Service station arrived around June 13, 2006.  Check points were set up on the access road to inform participants of the

---

[2]One untimely permit application was received by the Forest Service but was denied because it was not submitted sufficiently in advance of the event and because the limit for an unpermitted event had already been exceeded.

need for a permit and, thereafter, to inform arrivals that the gathering was in violation of the permit regulations. Fliers were also distributed with this information. The Forest Service did not want the gathering to be held at this particular location because of a high fire danger, as nearly 70% of the trees in the area were dead. Incident team groups patrolled the area and issued tickets. Defendant approached a team and requested a ticket in order to challenge the permit requirement pursuant to the Religious Freedom Restoration Act (the "RFRA"), 42 U.S.C. § 2000bb-1(a) *et seq.* Defendant testified that he attends the gatherings for the purpose of prayer and that obtaining a permit violates the group's religious belief that no individual can speak for the group as a whole.

Magistrate Judge West considered Defendant's RFRA defense and concluded that the permit requirement is not restrictive on the exercise of religious freedom and did not substantially burden the Defendant's exercise of his religious beliefs. In addition, Magistrate Judge West concluded that the permit requirement was not being selectively enforced and that the Forest Service had a legitimate public interest in mitigating the significant injury to Forest Service land given the large number of persons present. After citing various cases involving Rainbow Family challenges to the permit requirement in which the regulations were upheld against First Amendment claims, Magistrate Judge West found that the evidence established the elements of the offense charged. This appeal followed.

## Standard of Review

Pursuant to 18 U.S.C. § 3402, a conviction by a United States magistrate judge may be appealed to the district court. The scope of the appeal "is the same as in an

4

appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

The RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). Such a burden may be permitted, however, if the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Religious exercise, as defined by a related statute and incorporated into the RFRA, "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "Once a defendant shows that applying a statute to him will substantially burden his religion, the government must justify the burden by establishing a sufficiently compelling interest and showing that it could not accommodate religion more without serving that interest less." *United States v. Friday*, 525 F.3d 938, 946 (10th Cir. 2008). The questions of whether a governmental interest is compelling and whether the statute is the least restrictive means of furthering that interest are both issues of law. *Id.* at 949. I review the question of whether the RFRA has been violated *de novo,* with deference to the Magistrate Judge's underlying factual findings. *United States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996).

Because Defendant did not actually apply for a permit, Defendant is precluded from raising as-applied challenges to the permit requirement unless he can show that his application would have been futile. *Friday*, 525 F.3d at 951. The record here shows that permits have previously been issued to Rainbow Family members for their annual gatherings and Defendant has not provided any evidence that would demonstrate

5

futility. Accordingly, only Defendant's facial challenges to the permit regulations will be analyzed.

Discussion

All groups of 75 or more are required to obtain a special use authorization, or a permit, to use or occupy National Forest System land or facilities. 36 C.F.R. §§ 251.50(c)(1), 251.51. To obtain a permit for non-commercial group use, an application must be received at least 72 hours in advance of the proposed activity. 36 C.F.R. § 251.54(g)(2)(iv). A permit application for non-commercial group use requires the following information: (A) a description of the proposed activity: (B) the location and description of the Forest System lands and facilities the proponent would like to use; (C) the estimated number of participants and spectators; (D) the starting and ending time and date of the proposed activity; and (E) the name of the person or persons 21 years of age or older who will sign a special use authorization on behalf of the proponent. 36 C.F.R. § 251.54(d)(2)(i). The authorized Forest Service officer is required, to the extent practicable, to provide guidance to the applicant on issues such as possible land use conflicts, procedures and time requirements, proponent qualifications and applicable fees, environmental and management considerations, and special conditions. 36 C.F.R. § 251.54(e)(3).

Permit applications may be rejected for a number of reasons, including because the proposed use is inconsistent or incompatible with the purposes for which the lands are managed or with other uses, the proposed use would not be in the public interest, or because there is "no person or entity authorized to sign a special use authorization and/or there is no person or entity willing to accept responsibility for adherence to the

terms and conditions of the authorization." 36 C.F.R. § 251.54(e)(5). In reviewing applications for non-commercial group special use permits, the reviewing officer considers compliance with eight criteria, including such factors as the effect of the activity on the resources and land, public health issues including sanitation, waste-disposal, drinking water, risk of contamination, and public safety issues. 36 C.F.R. § 251.54(g)(3)(ii). If the permit is denied and an alternative time, place or manner will permit the applicant to meet the eight relevant application criteria, the officer is required to offer that alternative. 36 C.F.R. § 251.54(g)(3)(iii).

Defendant states that he attends the Rainbow Family annual gathering for religious exercise, including participation in prayer circles and meditation and joining with persons sharing his spiritual beliefs. Defendant contends that the permit regime violates his exercise of religion[3] in several aspects, specifically the signature requirement, the timeliness limitations, and the site selection process.[4] He does not dispute the compelling governmental interests in protecting health and safety and preserving Forest System lands but argues that the permit regime is not the least restrictive means of achieving these goals.

---

[3]The government does not take a position on whether Defendant's religious belief is sincere and there does not appear to be any need to analyze this aspect of the case.

[4]Defendant also contends that the enforcement procedures, including his arrest and appearance in court, burdened his practice of religion. These events, however, are consequences of the violation, not a problem with the permit regime itself. Defendant also argues that the presence of incident team patrols disturbs his religious practice; however, government action that affects Defendant's "subjective, emotional religious experience" does not amount to a substantial burden under the RFRA. *Navajo Nation v. United States Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008) ("[U]nder Supreme Court precedent, the diminishment of spiritual fulfillment - serious though it may be - is not a 'substantial burden' on the free exercise of religion.").

1. Substantial Burden

Defendant has made little showing that the permitting process itself amounts to a substantial burden on his exercise of religion. A substantial burden, within the meaning of the RFRA, arises when the government puts substantial pressure on an adherent to modify his or her behavior and to violate beliefs, or forces an individual to choose between following the precepts of his or her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts. *United States v. Philadelphia Yearly Meeting of the Religious Society of Friends*, 322 F. Supp. 2d 603, 608 (E.D. Pa. 2004) (citations omitted).

First, Defendant has not shown that the Rainbow Family gathering must be held on National Forest Service lands as a matter of religious exercise rather than tradition or preference. *Meyer*, 95 F.3d at 1482 (court may examine whether sincerely held beliefs are "religious beliefs," rather than a philosophy or way of life). In a similar case involving a member of the Rainbow Family on the same charge, another district court concluded as follows: "[I]t would appear that gathering en masse on National Forest lands for Fourth of July celebrations is a religiously motivated practice - but not one that is compelled. . . . Further, it appears to be obvious that Rainbow Family members have the option of gathering on private land if they do not wish to comply with the regulations' minimal requirements." *Nenninger v. United States Forest Service*, Civil No. 07-3028, 2008 WL 2693186 at *6 (W.D. Ark., July 3, 2008); *see also United States v. Kalb*, 234 F.3d 827, 831-33 (3d Cir. 2000) (examining First Amendment challenges by Rainbow Family members to permit requirements, including need for signature, and noting that the regulation does not preclude the use of state or private property for Rainbow Family

8

gatherings or prevent gatherings of less than 75 persons on Forest Service land). Although Defendant stated in his testimony that gathering on public land is a component of his religious practice, the other evidence presented does not support this; the religious aspect of the gathering clearly involves fellowship in the presence of undeveloped nature, but no evidence is provided to show that the jurisdictional status of the land is relevant. *See United States v. Adams*, 388 F.3d 708, 711 (9th Cir. 2004) (defendant's "conclusory assertion that the national forests are 'vital' to the Rainbow Family gathering represents, at most, his personal preference.").

In addition, the Tenth Circuit has expressed reservations as to the idea that a permit requirement, standing alone, amounts to a substantial burden on the exercise of religion. *Friday*, 525 F.3d at 947 ("We are skeptical that the bare requirement of obtaining a permit can be regarded as a 'substantial burden' under the RFRA, at least in this case. Many religious activities, from building a church to homeschooling a child to obtaining peyote for a Native American Church ceremonial, require some form of advance authorization from the state."). The Tenth Circuit does leave open that possibility, however, if the defendant's "religious tenets are inconsistent with using an application process." *Id.* at 948.

Defendant contends that the signature requirement for the permit application violates his religious practice or beliefs. The Mini Manual published on a Rainbow Family-associated website expresses this as follows: "We do not sign permits or agreements with the government. Our non-hierarchical structure gives nobody the authority to sign such a thing . . . ." Despite Defendant's assertion, it is unclear whether this is a matter of tradition, internal self-governance, and/or philosophy rather than

9

religious exercise. Again, however, even if this is an aspect of the exercise of religion, I am not persuaded that the signature requirement amounts to a substantial burden.

First, I note that the regulation vests the issuing officer with the ability to offer an alternative time, place, or manner that will fulfill the eight application criteria, where feasible. This leaves open the possibility that the permit could be issued without a signature if an alternative is provided that will achieve the same purposes, such as having a contact person for the group and an indicia of commitment that the group will follow the terms of the permit. *See Kalb*, 234 F.3d at 833 (signature requirement is needed to ensure that the group will be responsible for the actions of its members as a whole); 36 C.F.R. § 251.54(e)(1) (individual signing for permit does so as agent for group and provides name and address in order to allow notice of actions pertaining to the application to be communicated to the group). In addition, it appears that the Rainbow Family does have a decisionmaking process through the use of councils and other consensus-based procedures; it is not clear to me why representatives could not be designated through the same methods that sites are chosen and other decisions made. *See United States v. Rainbow Family,* 695 F.Supp. 294, 298 (E.D.Tex. 1988) (finding that the Rainbow Family is subject to suit as an unincorporated entity;"The evidence reveals that the Rainbow Family, although informal and loosely-knit, nonetheless operates as an organization, with decision-making 'councils,' individuals who acts as agents, representatives, or leaders on a voluntary basis, and which has an informational network."). Because of these numerous possible accommodations, I am not persuaded that the signature requirement forces Rainbow Family members to violate their religious beliefs in order to obtain a permit for their gathering.

To the extent Defendant's argument is premised on the notion that the group cannot be bound to any limitations, whether agreed to by some members on behalf of the group or imposed by the government, because of religious belief, this would effectively prohibit any action to further the compelling governmental interests in protecting Forest Service land from the harms caused by large groups of users and public health and safety. These interests and the role of the permit regulations in furthering them are discussed below.

Defendant also argues that the Forest Service's site selection process burdens his religious practice because the Forest Service is "loathe to permit any site not suggested by [the Forest Service]." I conclude that this is an as-applied challenge and not a facial challenge to the regulation and therefore do not consider it.

Defendant contends that the 72-hour advance application requirement was impossible for him to comply with because when he arrived at the site there were already more than 75 people present. Again, this is an as-applied challenge. Defendant has not made any argument or showing that the timeliness requirement on its face burdens the Rainbow Family's practice of religion.

2. <u>Compelling Government Interest</u>

It has been established through the regulatory process and by a number of previous court cases that the permit regulations are narrowly tailored to serve three compelling interests: (1) to protect resources and improvements on National Forest System lands; (2) to allocate space among potential or existing uses and activities; and (3) to address concerns of public health and safety. *Kalb*, 234 F.3d at 832 (citing, *inter alia*, 60 Fed. Reg. 45,258, 45,262 (1995)); *see also United States v. Nenninger*, 351

11

F.3d 340, 346 (8th Cir. 2003). The permit requirement furthers those compelling interests by providing notice to Forest Service personnel of large groups that will be using the forest so that the personnel, through advance preparation, can minimize any damage that may occur. *Kalb*, 234 F.3d at 832-33 (citing *United States v. Johnson*, 159 F.3d 892, 895 (4th Cir. 1998)).

In promulgating the regulations, the Forest Service established a record showing how its interests are furthered by the permit regime. The Forest Service has a mandate to protect the national forests and regulate their occupancy and use for all members of the public. 60 Fed. Reg. at 45,262. In publishing the Final Rule amending the non-commercial group use requirements, the Forest Service provided an extensive history of issues that had arisen on National Forest land caused by Rainbow Family gatherings. 60 Fed. Reg. at 45,263-65. Previous gatherings have caused environmental harms including soil compaction and loss of vegetation. *Id*. Latrines have not always been properly constructed or consistently used, causing a health danger from uncovered waste. *Id*. Disease outbreaks have occurred. *Id*. The large number of participants causes traffic and parking problems. *Id*. According to evidence presented at the trial, in 2004, the gathering was held in an area with tribal burial grounds. In 2005, the group landed in a research area for threatened and endangered species, although the group moved once it learned of this.

I am persuaded by this record that the government's interests in the protecting and allocating the Forest System's resources and maintaining public health and safety are impacted by the Rainbow Family's large gatherings. The permit requirement is designed and intended to specifically address those interests by giving the Forest

Service advance notice of large groups, the ability to prevent gatherings in places where there is a particular danger of harm to the land or to public safety (such as the high fire danger at the 2006 gathering site), and a means to ensure that the group will abide by the terms of the permit. Accordingly I agree that there is an adequate showing that the case-specific harms are addressed by the regulation here.[5]

In addition, I agree with the government that the signature requirement furthers the compelling interests identified above. The identification of a contact person is essential for communicating and receiving information about sites and special conditions. In addition, as noted in previous cases considering the issue, the signature requirement assists in ensuring that the group will abide by the permit's terms and conditions. *Kalb*, 234 F.3d at 833 (quoting *United States v. Masel*, 54 F. Supp. 2d. 903, 919 (W.D. Wis. 1999) ("Without the ability to impose terms and conditions on all members of a group, the government would clearly be extremely hampered in its ability to achieve any of its interests. The terms and conditions of a group use permit would have little teeth if they only applied to the individual who signed the permit.")).

Although Defendant has not shown that the advance application requirement and the regulation of site choices is a burden on his religious practice, even if it were, I agree with the government that these aspects of the permit regime also further the governmental interests. The timeliness requirement gives the Forest Service advance warning and permits it to prepare for the large groups to come. In addition, the permit

---

[5]Defendant argues that the government must show that he presented a particular harm. I disagree. The issue is the presence of a large group without a permit, not his individual presence on Forest Service land.

regime's flexibility regarding site choices allows the Forest Service to ensure that particularly inappropriate sites are not used, as has occurred in the past.

      3.      <u>Least Restrictive Means</u>

Finally, I agree that the regulations are the least restrictive means of furthering these compelling interests. As discussed above, the regulations are narrowly tailored to advance the Forest Service's interest in resource protection and allocation and protection of public health and safety. The regulations also contain a great deal of flexibility which allows modification and alternatives provided the same goals can be met.

Defendant's proposed alternatives, which he contends would be less restrictive, do not appear to be effective. Defendant suggests first mutual operating plans similar to those used in the past. To the extent that a mutual operating plan involves creating a binding commitment by representatives of the Rainbow Family on the participants at the gathering, this would appear to involve the same problem as the signature requirement for a permit application. If the cooperative plans are not binding on the group, then, as the record shows, they are ineffective. In promulgating the regulations, the Forest Service noted that informal agreements with individuals or subgroups are not respected by other groups, which means that the Service cannot obtain compliance with the conditions needed to ensure public health/safety or protection of resources. 60 Fed Reg. at 45,274.

Defendant also suggests issuing permits to individuals or smaller groups, or issuing a permit without the requirement of a signature. Defendant does not explain or show how issuing permits to smaller groups would enable the Forest Service to regulate

14

the activities of the large group gathering. In addition, eliminating the signature requirement appears to be within the discretion of the Forest Service personnel under the regulations, provided an alternative is provided that will achieve the same goals. Defendant, however, has not identified an alternative that would allow adequate notice and identification of a contact person and provide assurance that the permit conditions would be adhered to by the group.

I agree with Magistrate Judge West that the RFRA does not provide Defendant with a defense to the crime charged. The Forest Service's regulations requiring a permit for non-commercial groups exceeding 75 on Forest Service land does not create a substantial burden on Defendant's exercise of religion. Even if it did, the permit regulations are the least restrictive means of furthering the government's compelling interests identified above.

Accordingly, it is ordered:

1. Defendant's conviction and sentence are affirmed.

DATED at Denver, Colorado, on June 23, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge